THE DENVER & RIO GRANDE RAILROAD CO., APPELLANT, v. HODGSON, APPELLEE.

1. EVIDENCE, WHEN WEIGHT OF NOT CONSIDERED.
Although the appellate tribunal reviewing the record may be dissatisfied with the verdict, the judgment will not be reversed, as not warranted by the proof, when there is legal evidence to sustain it. Greater freedom is allowed the trial judge in this respect, and this authority should be fearlessly exercised.

2. RAILROAD COMPANY—DUTY TO PASSENGERS.
A railroad company owes a peculiar duty to its passengers for hire. It is bound to exercise the highest degree of care and skill reasonably practicable in the management of its trains. This duty does not cease upon the arrival of the train at the place of the passenger's destination,—it is still bound to furnish him an opportunity to alight, and to use the utmost care and diligence in providing him a safe passage from the train to the platform of the depot.

3. NEGLIGENCE.
It is grossly negligent to run a train, without notice, at a high rate of speed, between a train from which passengers are alighting and the depot.

4. SAME—PASSENGER NOT REQUIRED TO LOOK AND LISTEN.

The obligation which rests upon a traveler on the highway to stop,
   look and listen before crossing a railroad track, does not apply to
   a passenger going from the train to the depot.

*Appeal from the District Court of Arapahoe County.*

ACTION for personal injuries. Judgment for plaintiff.
Appeal by defendant.

Messrs. WOLCOTT & VAILE and Mr. HENRY F. MAY, for
appellant.

Mr. RALPH TALBOT, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

This action was commenced by the appellee in this court,
Sarah R. Hodgson, to recover damages resulting from the
death of her husband, Alfred E. Hodgson.

In August, 1889, the deceased was a passenger for hire on
one of the numerous trains operated by the appellant com-
pany, between the city of Denver and the town of Littleton
ten miles distant. The evidence shows that the train upon
which the deceased was conveyed to the town of Littleton,
reached that place on time, and was halted upon the side
track near the depot, for the purpose of discharging passen-
gers, etc.; that the main track of the appellant company lay
between this side track and the depot buildings. About the
time of the arrival of this train, a train coming from the op-
posite direction passed the station at a high rate of speed, on
the main track. The train upon which the deceased was a
passenger is referred to by the witnesses as number three,
and the other train as number eight. The engine of train
number eight struck the deceased, who was crossing the
main track at the time it was passing the station, inflicting
injuries upon him, from the effects of which he died soon
thereafter.

The evidence leaves it in doubt as to whether the deceased at the instant of the accident was passing from number three to the depot, or whether he had already reached the depot and was proceeding to return across the main track, for some reason not explained. The principal contention upon the trial was over this question, and although the jury took the view that he had not yet reached the depot at the time of the accident, the opposite conclusion is urged with much force in this court. The jury returned a verdict for the plaintiff for the sum of $5,000, and also certain findings of fact in answer to the following special interrogatories.

." First. Do you find from the evidence that the deceased was struck by the engine drawing train number eight while he was passing from train number three to the depot platform at Littleton station?

" Answer. Yes.

" Second. Do you find from the evidence that the deceased was struck by the engine drawing train No. 8 after he left train No. 3 and reached the depot platform, and had returned again to the main track?

" Answer. No.

" Fourth. Do you find from the evidence that there was sufficient time intervening between the stoppage of train No. 3 and the arrival of train No. 8 for the deceased to pass from said train No. 3 to the depot platform at the station in safety, had he exercised reasonable care under the circumstances in so doing?

" Answer. No."

The principal, and we may say the only contention in this court on the part of the appellants is that the special findings of fact are not supported by the evidence, it being practically admitted that if they are the judgment cannot be disturbed. It is contended by appellants that there is no evidence showing, or tending to show, that the deceased was struck by train No. 8 while he was passing from train No. 3 to the platform. The accident occurred at night; there were no lights about the depot, other than the train lights, and this no doubt ac-

counts in a measure for the uncertainty of the testimony. In support of the special findings of the jury, appellee relies principally upon the testimony of two witnesses, viz., Daniel Shuckhart, and F. W. Shuckhart, with possibly some slight corroboratory evidence from the cross-examination of the defendants' witnesses.

The witness, Daniel Shuckhart, (a lad of sixteen years of age, at the time of the accident,) testifies that he was standing at the section house about eighty-five yards from the depot when train No. 3 came in on the side track; that, with another boy, he ran to the side of this train, trying to get on it to secure a ride; that he did not get on the train because it was running too fast, but ran alongside of it; that he went running and walking, about fifty yards, when the sound of the danger signal, from the engine of No. 8, startled him, and he ran across the track, thinking they were signaling at him, and then passed down to the depot and saw them picking Hodgson up. Upon being interrogated further, the witness expresses the opinion that he was about twenty seconds going from the point at which he tried to board the train, to the point where he heard the danger signal; that he was running most of the way. He could not tell whether the train from Denver had stopped before the man was struck, or not, but it had stopped before he (witness), stopped running when he heard the danger signal, and that train No. 8 going towards Denver then passed by. When required to estimate the time between the arrival of No. 3 and the coming of No. 8, he said that he thought it was a minute, or less.

The witness, F. W. Shuckhart, testified that he was station agent and telegraph operator for the Atchison road, but that he had previously been an employee of the Denver & Rio Grande Railroad Company. He stated that he had been railroading about twenty-two years; that he was not acquainted with Mr. Hodgson, and had no interest in the case in any way; but he was at Littleton near the main line of the Rio Grande track when the accident occurred. He states that he saw train No. 8 approaching; that he was then stand-

ing 150 feet away from the track; that train No. 3 and train No. 8 arrived almost simultaneously; that the time was so short from one train to the other that he would be unable to measure it. The witness also testified that, in his judgment, train No. 8 was running at the rate of twenty-five miles an hour, at the time. Although the evidence of these witnesses as to the time of the arrival of train No. 8 with reference to the arrival of train No. 3 is in conflict with the evidence of several witnesses introduced by the defendant, who swear that from two to three minutes elapsed between the time of the arrival of the two trains, some of whom swear positively that Hodgson had reached the depot platform, and was recrossing in the direction of the train, at the instant of the accident, we do not feel justified in reversing the judgment.

Aside from this it is shown that none of these witnesses had any previous acquaintance with the deceased, and it is not clear that anyone of them saw him at the instant of the accident, although they saw a man whom they thought to be Hodgson, walking down the platform just prior thereto. It is quite likely that this was not Hodgson at all, but some other person. The point at which Hodgson was picked up, opposite the depot, coupled with evidence that he was not thrown or carried forward any perceptible distance by the train, is a circumstance which would naturally tend to convince the jury that a mistake in identity was probable.

The case has been twice tried with the same result. Two juries, upon their oaths, have found against the defendant upon these issues. Added to this, we have the weight of the opinion of the trial judge in support of the last verdict, whose opinion is always entitled to respect on account of the peculiar opportunities which he has of observing the witnesses while upon the stand, their manner of testifying, and their apparent candor, or lack of candor, etc. Every experienced judge knows that a multitude of circumstances occur in nearly every trial, that justly have weight with both court and jury, that cannot be transferred to the record in such

manner as that they may be given due consideration upon appeal. And although the appellate tribunal reviewing the record may be dissatisfied with the verdict, the judgment will not be reversed, as not warranted by the proof, where there is a legal evidence to sustain it. Greater freedom is allowed the trial judge in this respect, and this authority should be fearlessly exercised. . *Union Depot & R. Co. v. Smith*, 16 Colo. 361; *Aspen Times Co. v. Russell*, ante, p. 75; *Cluverius v. The Commonwealth*, 81 Va. 787.

The appellant, a common carrier, owed a peculiar duty to the deceased, a passenger for hire. It was bound to exercise the highest degree of care and skill reasonably practicable in the management of its trains. This duty did not cease upon the arrival of the train, upon which the deceased was a passenger, at the place of his destination; the company was still bound to furnish him an opportunity to safely alight therefrom, and to use the utmost care and diligence in providing for him a safe passage from the train to the platform of the depot.

The company in this instance is shown to have been grossly negligent in running an express train, without notice, at a high rate of speed between the train from which passengers were alighting and the depot. Ordinary prudence should have suggested a different arrrangement of its schedule in the first instance, and, failing in this, its employees should have given sufficient warning. The deceased continued to be a passenger until he at least had an opportunity to reach the platform, and he had a right to rely upon the presumption that the company would not expose him to unnecessary peril in so doing. The obligation which it has been held rests upon a traveler upon the highway to stop, look and listen, before crossing a railroad track, does not apply to a passenger in passing from the train to the depot. *Greyson v. The Old Colony & N. R. R.*, 100 Mass. 215; *Kleim et al. v. Jewett*, 26 N. J. 474; *Gonzales, Adm., v. The N. Y. & H. R. R. Co.* (Court of Appeals), 39 Howard's Pr. Reports, 407.

The judgment of the district court is affirmed.

*Affirmed.*