[No. 5852.]

## The Colorado Springs and Interurban Railway Company v. Allen.

1.  **Evidence—Admissibility**—In an action for personal injuries, complaints of the plaintiff, made months after the injuries received, indicating present pain, are admissible, their value being dependent on the circumstances.—(6, 7)

2.  **Appeals — Harmless Error —** Where the manager of a street railway testifies that the cars used thereon cannot possibly start with a sudden jerk, to refuse to allow him to testify that he had never known of such an occurrence, is harmless.—(7)

The reception of testimony variant from the pleadings will not suffice to reverse where no grave and prejudicial error appears.—(8, 9)

3.  **Trial — View — Discretion of Trial Court —** Plaintiff complaining of an injury which she attributed to the sudden starting of one of defendant's cars, upon which she was a passenger, and defendant contending that the car could not possibly make a sudden start, it was held discretionary with the trial court to allow or refuse the application of the defendant that the jury should be sent to view the car.—(9)

4.  **Instructions — Not Based Upon Evidence —** The court is not to instruct upon a theory of the case resting upon mere conjecture.—(10)

5.  **New Trial—Newly Discovered Evidence—Affidavit—**The affidavit to support a motion for a new trial upon the ground of newly discovered evidence must be made by the party, or a sufficient excuse for his failure, must be exhibited.—(10, 11)

The affidavit of the attorney containing only hearsay will not suffice.—(11)

6.  **Damages — Mental Suffering —** In an action for personal injuries, the plaintiff may be allowed compensation for mental and physical pain endured in the past, or to be suffered in the future, as the proximate result of the injury.—(11, 12)

7.  **Passenger Carrier — Duty to Passenger —** The carrier is bound to exercise, for the safety of the passenger, the highest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance, and consistent with the practical prosecution of the business.—(9)

*Appeal from El Paso District Court* — Hon. Louis W. Cunningham, Judge.

Messrs. McAllister & Gandy, Mr. David P. Stickler, and Mr. W. J. Chinn, for appellant.

Mr. Louis W. Cunningham, for appellee.

Chief Justice Steele delivered the opinion of the court:

From a judgment in the sum of six thousand dollars in favor of the plaintiff, the defendant appealed. The assignments of error are:

(1) "The verdict and judgment in favor of plaintiff were unsupported by and against the great preponderance of the evidence in the case, and the court should have directed a verdict for the defendant."

(2) "The court erred in admitting certain evidence offered by the plaintiff."

(3) "The trial court erred in refusing to admit evidence offered in behalf of defendant."

(4) "The court admitted evidence with respect to plaintiff's injury not authorized by the pleadings, there being a fatal variance between the allegations and the proof in this respect."

(5) "The court below should have granted defendant's motion, made at the conclusion of the evidence, to allow the jury to inspect one of defendant's cars of the character upon which plaintiff claimed to have been riding, and to note its operation, etc."

(6) "The court's instruction imposed too high a degree of care upon defendant, and it erred in refusing to instruct the jury upon this subject as requested by defendant."

(7) "Defendant's requested instructions numbered 11 to 17, inclusive, should have been given."

(8) "A new trial should have been granted, and

the judgment should now be reversed, on account of newly discovered evidence."

The plaintiff alleged in her complaint "That on the 6th day of July, 1904, this plaintiff was a passenger on one of the cars of the defendant, having gotten upon said car at the corner of Tejon Street & Pike's Peak Avenue, on its line of road extending from the City of Colorado Springs Westerly to the town of Colorado City, at about the hour of 11:30 o'clock in the forenoon of said day, and when said car had reached the corner of Sixth Street and Colorado Avenue, it stopped for the purpose of permitting passengers to alight. That plaintiff attempted to alight from the hind end of said car, and while in the act of alighting, said car without notice of warning to plaintiff was, by the defendant suddenly and negligently started, thereby giving the plaintiff a sudden and severe jerk, inflicting the injuries hereinafter specified."

We shall consider the assignments of error in the order in which they have been presented in the briefs of counsel.

(1) While there were a greater number of witnesses testified for the defendant than for the plaintiff, still the plaintiff's testimony supported the allegations of the complaint, and we are unwilling to say that the verdict is so manifestly against the weight of the evidence that it should be set aside.

(2) Two or three of the witnesses offered on behalf of the plaintiff were asked (referring to the plaintiff): "Did she make any exclamations or complaints of any present pain?" Each witness interrogated answered the question in the affirmative. What the exclamation or complaint made was, is not disclosed by the abstract. It is contended that this testimony was incompetent. The exclamations of present pain were made several months after the

plaintiff was injured, and do not constitute any part of the *res gestae,* but such testimony is admissible, not as a part of the *res gestae,* but in support of issues of the case.   In determining whether the plaintiff was, or was not suffering at that time, such exclamations were admissible for what they were worth. Such declarations may or may not be of great value, dependent entirely upon the circumstances of each case, but we think their admissibility is supported by the great weight of authority.—1 Greenleaf on Evidence, § 102; *A. T. & S. F. R. R. Co. v. Johns,* 36 Kan. 769.

(3) A witness, the superintendent of the defendant, was asked if he had ever known one of the cars of the company to start "with any manner of a jerk." The objection to the question was sustained. The defendant offered to prove that the witness had, for a long time prior to July 6, 1904, been "familiar with the manner of starting these Manitou cars and how they were started by the motormen, and that he never knew of a case where one of those cars was started with any manner of a jerk." The plaintiff had testified with respect to the jerking of the car, and had stated that it had started with a jerk. No witness appears to have seen the plaintiff at the time she is alleged to have received the injury, but several witnesses were permitted to testify that it was impossible for the car to start with a jerk as described by the plaintiff. If any error was committed by the court in rejecting this testimony, it was not prejudicial, for the witness had testified that it was impossible to start the car with a jerk.

(4) The third paragraph of the complaint is, "That by reason of the facts hereinbefore alleged, plaintiff was severely and permanently injured in and upon her back and spinal column, that one of the vertebrae thereof was put out of place and dislocated,

thereby permanently injuring plaintiff and permanently injuring her nervous system, circulation, and general health, and impairing and destroying her ability to work, and that said injury has caused, and does cause, and will continue to cause this plaintiff intense mental and physical pain and agony, and has rendered her a cripple for life.''

One of the medical witnesses testified that a skiagraph disclosed evidence to him of a fracture of one of the processes of the fourth lumbar vertebra. This testimony was received without objection. Plaintiff's counsel then sought to have the physician point out on a skeleton the particular bone that was injured, but, on objection by the defendant, the testimony was refused. On cross-examination more testimony on the subject was elicited. Then a motion to strike was interposed and denied. Then more testimony upon the same subject was brought out on cross-examination.

The court read into its instruction the third paragraph of the complaint, and limited recovery to ''such injuries as she has alleged in her complaint, and which she may have proven she has sustained.''

We are of opinion that the variance should be disregarded, because the substantial rights of the defendant were not affected. It appearing that all the testimony on the subject of a fracture was received without objection, or was brought out by the defendant on cross-examination; that the jury was directed to allow the plaintiff damages for such injuries only, as were pleaded and proved—the skiagraph was not offered in evidence; that no medical witness was produced by the defendant; and the defendant objected to an exhibition showing the injured parts; that a motion to amend to conform to the proof would have been granted, there being no contention of surprise or prejudice in support of the motion to strike; that

by the verdict the plaintiff was awarded damages in the sum of six thousand dollars only; that the physicians who attended her, all testified to her present inability to completely control her lower limbs, and that her condition at the time of the trial was worse than at the time she received her injuries; that the prognosis of those who were asked to venture an opinion was, that she would not recover. We are unwilling to set aside the verdict and require the plaintiff to undergo the expense and tedium of another trial, no grave and prejudicial error appearing in the record.

(5) Complaint is made that the court refused to permit the jury to examine one of the cars of the company, and witness its operation, it being contended that this would show that the appliances now used upon these cars are such that it is impossible to start them with a sudden jerk. These matters are within the discretion of the court and we cannot say that the court abused its discretion in its refusal to permit the jury to witness the operation of one of the cars.

(6) It is claimed that the court, in its instructions, imposed too high a degree of care upon the defendant. This court, in the case of the *Colo. & Southern Ry. Co. v. McGeorge*, 46 Colo. 15, has declared that, ''For the safety of their passengers common carriers are required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight, in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of their business.''

We find nothing in the instructions that holds the appellant to a higher degree of care than is imposed upon common carriers of passengers by the law as declared in the case here cited.

(7) With respect to certain instructions refused,

appellant has this to say: ''Plaintiff's evidence relative to the manner of the accident was so indefinite and inconsistent as to warrant the court in assuming that if the same occurred at all, it must, or at least might, have been due to the plaintiff's attempting to alight while the car was in motion, holding on to the grab handle of the car after she had alighted, etc. While there was no direct evidence that the plaintiff did this, nevertheless, it was far more consistent with the theory of her having received any injuries at all, than was the version which she gave of the accident. This being true, the defendant offered a number of instructions upon the subject, all of which were refused.''

There is no rule of law with which we are familiar, which requires the giving of instruction upon the theory advanced by defendant here. The court instructed that the plaintiff was not entitled to recover unless at the time of the injury she was in the exercise of reasonable and ordinary care and caution, and that although the jury might find the defendant guilty of negligence which contributed to the injury, the plaintiff was not entitled to recover if she also was guilty of negligence directly contributing to the injury.

There was no proof that the plaintiff was guilty of contributory negligence, and it is our opinion that the rights of the defendant were fully protected by the instructions given.

(8) The motion for a new trial was supported by the affidavit of the attorney for the defendant.

The affidavit is in support of the claim of accident and surprise during the trial, and the offer to produce newly discovered oral evidence.

The law requires such affidavits to be made by the party or a valid excuse offered for his not making it; the law also requires the best evidence to be pro-

duced—the affidavit of the attorney is not the best evidence—it is hearsay—and there was no showing of a valid or any reason for not filing the affidavit of the proposed witnesses.

In support of the oral argument our attention is especially directed to the case of *Diamond Rubber Co. v. Harryman,* 41 Colo. 415, as bearing upon instruction No. 12 given over the objection of defendant.

The court instructed the jury that "in arriving at the amount of your verdict, you may take into consideration the nature and character of the injuries, the mental and physical pain, if any, she has suffered, or will suffer as the proximate result of such injuries, whether such injuries are permanent or otherwise, providing such injuries and suffering have been plead by plaintiff in her complaint, and proven by a fair preponderance of all the evidence introduced on the trial."

And counsel say that as the plaintiff had testified that on one occasion after her injury "she started to stoop to pick up her grandchild, but could not do it * * * and also, that as the result of her alleged injuries she was not able to go to her husband's office or to the ice-cream parlors with her friends as she formerly did. * * * The court's instruction No. 12, was sufficiently broad to authorize the jury to compensate the plaintiff for the mental suffering occasioned by the thought that she was not able to fondle her grandchild, etc., as she was theretofore able to do."

The plaintiff made no claims for such damages nor did the defendant request an instruction limiting her recovery to mental suffering connected with the pain.

In the *Harryman case,* the instructions authorized a recovery for "mental suffering arising from

disfigurement of person," and the case was reversed because that instruction was given. In the case *Tramway Co. v. Martin,* 44 Colo. 325, an instruction which authorized a recovery for mental suffering where it occurs in connection with a bodily injury (the court holding that the law does not separate the two, but allows a recovery for both) was sustained.

We find nothing in the record to warrant us in reversing the judgment, and it is, therefore, affirmed.

*Affirmed.*

Mr. JUSTICE CAMPBELL and Mr. JUSTICE MUSSER concur.