## FRANCIS v. FITZPATRICK et al.
### No. 6572.

United States Court of Appeals for the District of Columbia.

Decided Feb. 15, 1937.

ROBB, Associate Justice, and MARTIN, Chief Justice, dissenting.

814

Marcus Borchardt, of Washington, D. C., for appellant.

P. H. Marshall and Ringgold Hart, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This case is an appeal from a judgment in favor of the appellees as defendants below. The action was in tort for negligence. The sole question presented by the assignment of errors is as to the correctness of an instruction given the jury. Hereinafter the appellant will be referred to as plaintiff and the appellees as defendants.

The plaintiff was injured, it was alleged, while riding as a passenger in a taxicab owned and operated by the defendants as joint adventurers, the taxicab being driven for them by an agent. It was proceeding east on F Street, N. W., and was approaching First Street, N. W., in the District of Columbia. At the same time a Ford car was proceeding northerly on First Street towards F Street. The collision occurred within the intersection of F and First Streets.

The declaration charged negligence in operating the taxicab at a fast and reckless rate of speed and without having it under reasonable control so as to avoid colliding with other vehicles, and in failing to give the right of way to vehicles approaching from the right, as required in paragraph (e) Section 2, Article II, of the Traffic and Motor Vehicle Regulations for the District of Columbia in effect on the date of the accident, December 31, 1932. The traffic regulation referred to provided, so far as is pertinent:

"A vehicle approaching an intersection shall slow down and be kept under such control as to avoid colliding with pedestrians or vehicles. Operators of vehicles approaching an intersection shall give the right of way to vehicles approaching from their right . . . ."

The defendants denied the negligence charged.

There was a conflict in the testimony upon the question whether the driver of the taxicab made any attempt to slow down to avoid the collision, upon the question of the relative speed of the two cars, and upon the question as to which car reached the intersection first. For the plaintiff it was testified that the Ford car reached the intersection first, or at least at the same time as the taxicab, that it was proceeding at a more moderate speed than the taxicab, and that the latter, nevertheless, proceeded across the intersection, speeding up as it did so, rather than stopping or slowing down. For the defendants, on the contrary, it was testified that the taxicab reached the intersection first and at a time when the Ford car was a considerable distance away from the intersection, down First street; but it was also stated by defendants' witnesses that the Ford car was proceeding toward the intersection at a very rapid rate and that the taxicab was going slowly. It is especially in respect of the conflict upon the question as to which car reached the intersection first that the instruction given and complained of is said to be in error.[2]

---

2 Stated in further detail the testimony for the plaintiff was to the effect that: As the taxicab approached the intersection it was going about 22 miles per hour; it did not stop or make effort to stop or slow up before the collision, but on the contrary speeded up until it was traveling between 25 and 30 miles per hour at the moment of contact; as the Ford car approached the intersection it was traveling at "a moderate rate of speed"—according to its driver about 20 miles per hour—and after entering the intersection, more slowly; according to two witnesses, the plaintiff and the driver of the Ford, it entered the intersection before the taxicab; one witness for the plaintiff indicated that the two cars reached the intersection at the same time. For the defendants the testimony was that: The driver of the taxicab, on approaching the intersection, slowed down, looked up and down First Street, saw the Ford about 150 feet down First Street, but thought that it would stop or slow down, and therefore proceeded across the intersection but was struck on the right side of his taxicab when he was almost across. The taxicab was not going over 5 miles per hour at the intersection, and the Ford was traveling at least 55; the driver of the cab did not increase his speed going across the intersection or try to get in front of the other car; on the contrary he was braking all the time to stop for a stop sign on the far side of First Street which required the traffic to stop before entering New Jersey Avenue (beyond First Street). This was the testimony of the driver of the cab. Other witnesses

The instruction complained of (Defendants' Instruction No. 6) was as follows:

"You are instructed that the right-of-way at an intersection of two highways given by law has no proper application except where the vehicles on the intersecting highways approach the crossing so nearly at the same time and at such rates of speed that, if both proceeded, each without regard to the other, a collision between them is to be reasonably apprehended. *In such cases it is the right of the one having the right of way to continue his course, and it is the duty of the other to yield to him the right of way.* But if a vehicle not having such right of way comes to the crossing and finds no other vehicle approaching it upon the other highway within such distance as to reasonably indicate danger, the driver thereof is under no obligation to stop or to wait, but may proceed across such intersection as a matter of right." [Italics supplied]

The court, in other parts of the charge, had told the jury that there is usually required of a defendant automobile driver only the care of an ordinarily prudent person, but that a defendant common carrier must exercise more care, to wit, the highest degree of care; and the court had specifically given the charge (Plaintiff's Instruction No. 1):

"A taxicab holding itself out to serve those who apply for transportation is a common carrier of passengers, and as such is bound to exercise the highest degree of care in safeguarding its passengers for hire."

It is not claimed by the plaintiff that the instruction complained of is an incorrect statement of the law applicable to a situation where the obligations involved are merely those between the drivers of two cars approaching an intersection. But it is asserted that the instruction is misleading in respect of a case where one of two cars approaching an intersection is a common carrier which, as such, owes a duty not merely to the driver of the other car, but also to its own passenger. That is to say, asserts the plaintiff even if the driver of the taxicab might, in respect of his duty toward the driver of the Ford car, under the right-of-way rule, have been entitled to proceed across the intersection, he could not lawfully do so in respect of his duty towards his own passenger, if to do so would be a failure to use that degree of care exacted of a common carrier toward a passenger, to wit, the highest degree of care. In short, the plaintiff complains that the instruction should have been qualified by a statement to the effect that the duty of a common carrier to its passenger is paramount to the right of the common carrier to pursue its right-of-way in respect of another car.

We think the complaint of the plaintiff as to the instruction is well taken. It is true, as asserted by the defendants, and as we have above pointed out, that in addition to informing the jury concerning the duty of drivers toward each other in respect of the right-of-way at an intersection, the court also told the jury that a common carrier owes a passenger the highest degree of care. But nowhere in the instructions was the jury told that this duty toward a passenger is paramount to the right of a carrier to pursue its right-of-way in respect of another car. Thus the jury was given for its guidance two different legal concepts without explanation as to which was superior in case of conflict between them, or, putting it otherwise, without explanation as to the relationship of the concepts to each other.

On first thought it might seem that the plaintiff can hardly complain of the instruction given, since on her theory of the facts it was favorable to her. That is to say, it was her theory that the Ford car reached the intersection ahead of the taxicab or, at least, at approximately the same time, and therefore, under the instruction, it would have been the duty of the taxicab to give way, and this, undisputedly, it did not do. And the jury had also been instructed in the plaintiff's favor that violation of a traffic regulation, if the proximate cause of injury, is negligence. But the plaintiff was entitled not merely

---

for the defendant placed the Ford car 40 to 50 yards away from the intersection at the time the taxicab reached it, and set the speed of the taxicab at the time of the collision at 10 to 12 miles per hour, and that of the Ford at 35 or 40, or "so fast it couldn't stop." Still another witness placed the Ford when he first saw it at about the middle of the block and the taxicab at the intersection when he first saw it. The taxicab according to this witness was "not going fast at all"; the Ford was "going a little faster, real fast."

816

to instructions properly stating the law on her theory of the facts. She was entitled also not to have the instructions in respect of the defendants' theory of the facts mislead the jury in a manner which might operate to the plaintiff's disadvantage.

Concretely, if in this case the jury believed the testimony for the defendants to the effect that the taxicab reached the intersection first and when the Ford car was a considerable distance down First Street, the jury might well have concluded, under the instruction given, that the taxicab in continuing to cross the intersection was within its rights, provided the jury also believed that the Ford car was not within such distance as reasonably to indicate danger; and thus the jury, on this theory, might have reached a defendants' verdict. But had the jury been informed that if to pursue its right-of-way under the circumstances just above described would be a violation of the carrier's duty (of the highest degree of care) toward the plaintiff as its passenger, the carrier must then give up its right-of-way, the jury might well have arrived at a plaintiff's verdict. In short, the jury was in effect given as a criterion for the defendants' duty the right-of-way concept, which includes, as set forth in the instruction, the usual rule of the reasonable or due care of an ordinarily prudent man—and this was correct in so far as the duty of the defendants' driver toward the Ford car and its driver was concerned. But the defendants' driver had a higher duty toward the plaintiff as passenger, a duty to use the highest degree of care to protect the plaintiff from danger. The jury might well have believed that, according to the usual standard of care, the driver of the taxicab was, under all the circumstances of the case, including the relative nearness of the two cars to the intersection, and their relative speed—careful, and nevertheless it might have found that according to the high degree of care required of the taxicab driver toward the plaintiff passenger, he was not careful. Specifically the jury might have believed the testimony for the defendants that the taxicab driver entered the intersection first and while the Ford car was a considerable distance down First Street, and might also have believed that even if the Ford car was proceeding much more rapidly than the taxicab, it would not be lack of ordinary care for the taxicab driver to proceed, since he had the right-of-way, and might reasonably rely upon its being accorded him by the driver of the Ford; and still the jury, if fully instructed, might have found that such conduct would have been less than the extraordinary care owed the plaintiff passenger, that is, might have found that the taxicab driver should have stopped and permitted the Ford car to pass, regardless of the fact that technically the taxicab had the right-of-way.

There seems no dispute on the authorities in this case. The law is well settled that it is the duty of a common carrier to use the highest degree of care in the protection of its passengers for hire. We have so held in Dixon v. Great Falls & Old Dominion Railway Company, 38 App. D.C. 591, Ann.Cas.1913C, 571. See, also, Pennsylvania Co. v. Roy, 102 U.S. 451, 26 L.Ed. 141, wherein the Supreme Court states that a carrier "is required, as to passengers, to observe the utmost caution characteristic of very careful, prudent men."

The authorities cited by the defendants as validating the instruction given, Casto v. Hansen, 123 Or. 20, 261 P. 428; Johnson v. Underwood, 102 Or. 680, 203 P. 879; Barnes v. Barnett, 184 Iowa 936, 169 N.W. 365; Grant v. Marshall, 2 W.W.Harr. (Del.) 239, 121 A. 664; and Bland v. Hershey, 60 App.D.C. 226, 50 F.(2d) 991, do not involve the duty of a common carrier to a passenger.

The judgment of the trial court is Reversed.

Mr. Justice VAN ORSDEL concurs in the result.

ROBB, Associate Justice (dissenting).

I am unable to agree with the majority of the court that the judgment should be reversed or with the opinion concurred in by two members of the majority.

The record discloses that at the conclusion of the testimony the court granted four prayers requested by the plaintiff and four requested by the defendants, including defendants' instruction No. 6, as to which error is claimed.

Concerning this instruction, the record states: "The defendants * * * tendered to the Court the following instruction [defendants' instruction No. 6] which the Court granted to the defendants over the objection and exception noted by the attorney for plaintiff." The grounds of the objection and exception were not given,

and it is clear that it amounted only to a general exception by plaintiff. No objection or exception was taken by plaintiff to the charge of the court in any respect.

The opinion of Mr. Justice STEPHENS points out that "it is not claimed by the plaintiff that the instruction complained of is an incorrect statement of the law applicable to a situation where the obligations involved are merely those between the drivers of two cars approaching an intersection. * * * In short, the plaintiff complains that *the instruction should have been qualified* by a statement to the effect that the duty of a common carrier to its passenger is paramount to the right of the common carrier to pursue its right-of-way in respect of another car." (Italics supplied.)

In view of the general charge of the court, to which plaintiff took no exception, the plaintiff ought not to be permitted to urge upon appeal error which was not pointed out to the trial judge. Plaintiff should have sought in the trial court to have the instruction qualified in the manner now presented.

In Walsh v. Rosenberg, 65 App.D.C. 157, 81 F.(2d) 559, 561, appellant claimed error in an instruction, and in the trial court based his objection on "the doctrine of res ipsa loquitur, * * *." On appeal he sought to base error in the instruction on a ground not presented to the trial court; namely, that "it required appellant to overcome the presumption by *preponderating* testimony." We held, in an opinion by Mr. Justice Groner, that while "it is obvious that the court below erred in requiring appellant to overcome the presumption by 'preponderating' evidence," nevertheless the error could not be availed of on appeal. We further said: "We think there can be no question of doubt that the objection made to the prayer had no reference to that part of it which we have been discussing. It is manifest it did not call the attention of the court to the fact that the instruction imposed a higher burden of proof on the defendant (appellant) than we have said was proper in the circumstances; and we think it may be safely assumed that if it had, the court would have reformed the instruction in accordance with the rule laid down by this court. Viewed in this light, we think the objection now comes too late. It is the duty of counsel objecting to a charge of the court to call the attention of the court to the particular subject-matter to which the objection is directed, and if counsel fails in this duty the objection cannot be made for the first time in the appellate court."

In my view, the judgment should be affirmed.

I am authorized to state that Mr. Chief Justice MARTIN concurs in this dissent.