No. 18,240.

PUBLIX CAB COMPANY *v.* VERNON FESSLER, ET AL.

(335 P. [2d] 865)

Decided February 24, 1959. Rehearing denied March 16, 1959.

Messrs. KOBEY & MITCHELL, Mr. ROBERT T. BURNS, for plaintiff in error.

Messrs. WORMWOOD, O'DELL & WOLVINGTON, for defendant in error Denver-Chicago Trucking Company.

Mr. JAMES J. DELANEY, for defendant in error Vernon Fessler.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error, Publix Cab Company, seeks reversal of a judgment of the district court entered in

favor of the defendant in error, Fessler, the plaintiff in the district court. Publix had filed a Third Party Complaint against Denver-Chicago Trucking Company, also a defendant in error here; the trial court dismissed this latter complaint, and the propriety of *this* action is also before us on this review. The third party complaint by Publix sought indemnity from Denver-Chicago for any damages which the plaintiff might recover. This was grounded upon the theory that as between Publix and Denver-Chicago the negligence of Denver-Chicago was the ultimate legal cause of the injury.

In its answer (to the third party complaint) Denver-Chicago alleged that plaintiff Fessler was at the time of the accident an employee of Denver-Chicago subject to the Workmen's Compensation Act and further alleged that as a result the sole remedy against it for injuries suffered by plaintiff was under the Workmen's Compensation Act; that Publix was barred from indemnity; (notwithstanding negligence of Denver-Chicago which might have been the sole proximate cause of the injuries) since the exclusiveness of the workmen's compensation remedy could not be undermined indirectly by means of an indemnity suit.

The evidence as to what occurred in the case was limited to the testimony of the plaintiff. The Publix cab driver and the Denver-Chicago driver involved in the accident were not called as witnesses. Denver-Chicago is a trucking company having its terminal at 25th and Blake Streets, Denver, Colorado. This terminal comprises a large area completely enclosed by a fence with the exception of a gateway leading from Blake Street into the yard and dock area. The gate opens on Blake Street in the southeasterly corner of the property. The office is approximately 150 feet from the street. The building is a long one which extends back from the gate at right angles to Blake Street. At the far end of this building is the office and the area where this accident occurred. The office portion of the building is within a

recessed part thereof and faces and is parallel to Blake Street. On April 18, 1954, the night of the accident, plaintiff, a driver for Denver-Chicago, completed a run at about midnight. He parked his truck and proceeded to the office for the purpose of checking in and posting his time. He learned that another driver who had arrived a short time before had called a Publix cab on a private line provided by Publix for this purpose. Plaintiff, with the other driver, waited in the driver's room for the cab to arrive. Shortly after the call had been made the Publix cab drove into the Denver-Chicago property and came to a place within 12 or 15 feet of the office where plaintiff and the other driver were waiting. The cab came to a stop directly behind and at right angles to the rear of a large tractor trailer which was then taking on fuel at a nearby pump. The cab of the tractor was jack-knifed to the left in a position from which it was impossible to see the taxicab behind the trailer.

Signs were posted at the Blake Street gate. These warned persons other than employees to keep out and to keep vehicles out.

Publix had installed direct telephone lines in the Denver-Chicago terminal so that drivers could easily call cabs. Generally these cabs stopped on Blake Street by the gateway. However, the testimony showed that cabs entered the yard despite the policy of Denver-Chicago to keep them out and despite repeated orders from dispatchers.

As soon as the cab arrived plaintiff and the other driver proceeded directly to the left rear door of the cab and as plaintiff was about to enter it the truck suddenly backed into the cab and struck the right side of it opposite the place where plaintiff was entering. This impact threw plaintiff to the ground and the truck continued to back up and to push the cab sideways. Plaintiff was in a prone position but managed to get out of the way of the oncoming taxicab and truck-trailer. He suffered in-

juries to his back and hip and, although he made the return trip to North Platte later that day, he was totally incapacitated for about three weeks. Medical testimony at the trial indicated that he had suffered permanent disability to his back to the extent of 6% to 7%.

The particulars in which Publix urges that the trial court erred are:

1. "In holding that the negligence of Publix was the proximate cause of the accident."

2. "In not finding that from the incontrovertible facts and Fessler's own testimony, plaintiff was guilty of contributory negligence as a matter of law."

3. In not finding that the sole proximate cause of the accident was the negligence of Denver-Chicago and in dismissing the third party complaint against it.

4. In awarding excessive damages.

■■■■ 1. *The negligence of Publix Cab Company.*

We conclude that there is sufficient evidence to support the finding and conclusion of the trial judge (the trier of the facts). Publix stood in the relation of carrier to plaintiff. By reason of this it was obligated to refrain from creating a condition which would subject the plaintiff to risk of injury. Thus, it was obliged to provide him with a safe place to board its vehicle. Notwithstanding these legal duties, it entered the yard of Denver-Chicago — in spite of signs which were posted at the gates warning vehicles to keep out. It traveled a distance of approximately 150 feet beyond the gate and parked behind a heavy tractor trailer and at right angles to it in a position which exposed the right side of the cab to the rear of the trailer in a position which was beyond the view of the cab. The lights of the truck were then on and it was taking on fuel and thus it could reasonably be expected to move at any time. The cab could have stopped in any other position in this relatively large area and by exercising this slight precaution could have eliminated all hazard.

It is argued that the cab had the right to anticipate

that the truck would drive forward and not backward. However, a prudent carrier does not discharge its obligation to a passenger by proceeding on such an assumption. Would a cab be justified in assuming that a stopped train would proceed *forward* and not backward?

It may well be that as between Publix and Denver-Chicago this assumption would be proper, but a different obligation existed as between Publix and the plaintiff. Here the paramount duty was to the passenger. Under the circumstances presented, Publix was negligent as to its passenger even though it might argue that it was free of contributory negligence in its relationship to Denver-Chicago. See *Colorado & Southern Railway Co. v. Western Power & Light Co.*, 73 Colo. 107, 214 P. 30; *Francis v. Fitzpatrick,* 89 F. 2d 813, 67 App. D.C. 69, also 10 Am. Jur. 162.

In the latter case the United States Court of Appeals for the District of Columbia expressed the principle clearly in commenting upon an analogous situation.

" * * * But had the jury been informed that if to pursue its right of way under the circumstances just above described would be a violation of the carrier's duty (of the highest degree of care) toward the plaintiff as its passenger, the carrier must then give up its right-of-way, the jury might well have arrived at a plaintiff's verdict. In short, the jury was in effect given as a criterion for the defendants' duty the right-of-way concept, which includes, as set forth in the instruction, the usual rule of the reasonable or due care of an ordinarily prudent man — and this was correct in so far as the duty of the defendants' driver toward the Ford car and its driver was concerned. But the defendants' driver had a higher duty toward the plaintiff as passenger, a duty to use the highest degree of care to protect the plaintiff from danger. * * * "

 Publix owed to the plaintiff "the highest degree of care commensurate with the practical operation of its business." The carrier-passenger relationship is a factor

which is not present as between Publix and Denver-Chicago. This factor required Publix, in discharging its obligation, to exercise the highest degree of care and the slightest deviation from this constitutes negligence toward the passenger. This standard is set forth in numerous decisions of this Court. *Kansas-Pacific Railway Co. v. Miller,* 2 Colo. 442 (1874); *Colorado Springs & I. Ry. Co. v. Allen,* 48 Colo. 4, 108 P. 990; *Colorado Springs & I. Ry. Co. v. Allen,* 55 Colo. 391, 135 P. 790; *Rice v. Marlar,* 107 Colo. 57, 108 P. (2d) 868.

We have held that a carrier owes a passenger a duty of providing a safe place for him to be received. See *Atchison, Topeka & Santa Fe Railroad Company v. Shean,* 18 Colo. 368, 33 P. 108, and *Denver City Tramway Co. v. Hills,* 50 Colo. 328, 116 P. 125.

In the former case it was said:

" * * * Their duty in the latter respect is well settled. *D. & R.G. R. Co. v. Hodgson,* supra. In the case of *Pa. R.R. Co. v. White,* 88 Pa. St. 333, it is said:

" 'It is the duty of the company to provide for the safe receiving and discharging of passengers. It is bound to exercise the strictest vigilance not only in carrying them to their destination, but also in setting them down safely if human care and foresight can do so.'

"That the deceased had a right to rely on the performance of such duty by the company and proceed without taking the precaution to look and listen and that the failure to do so is not negligence, per se, is decided in numerous cases."

In stopping at a place unsafe for the purpose of boarding a cab which it knew or should have known was dangerous, Publix created a hazardous condition which as between it and its passenger was the proximate cause of the injury, and justified the trial court in concluding that Publix violated a duty owed to the plaintiff — passenger.

2. *Alleged contributory negligence of the plaintiff.*

The trial court concluded that the plaintiff was

not guilty of contributory negligence. We have analyzed the evidence and we do not agree with the contention of Publix that contributory negligence exists as a matter of law. The testimony is that plaintiff and the other driver were inside the building when the cab arrived. Following its arrival they proceeded immediately to board it. As we view the record, the trial court could have found that the plaintiff had no opportunity to calculate the risk or to appraise the danger. The court also could have concluded that the plaintiff was justified in anticipating that Publix would not select a place of danger as a site for boarding its vehicle, and it is not possible to say that plaintiff *voluntarily* assumed the risk when, as here, a carrier stops at a particular place and thereby coerces the passenger to get aboard there. It cannot be contended by the carrier that it is negligence for the passenger to fail to order it to move the vehicle before he, the passenger, will board it.

3. *Dismissal of the Third Party Complaint.*

On this point it is argued that the undisputed evidence discloses that Denver-Chicago was guilty of active negligence, that it should have anticipated the presence of a taxicab in the large area and should have controlled its active forces accordingly, and that, therefore, regardless of whether Publix was a trespasser, a licensee or an invitee, the conduct of Denver-Chicago toward Publix was negligent. It cites *Parrish, et al. v. De Remer, et al.,* 117 Colo. 256, 187 P. (2d) 597; *Colorado & Southern Railway Company v. Western Light and Power Co.,* supra, and *Otis Elevator Company v. Maryland Casualty Company,* 95 Colo. 99, 33 P. (2d) 974. These cases recognize that one of two joint tort feasors cannot recover *contribution* from the other, but hold that where there is joint liability to a third person and the joint negligence of two parties contributed to it and the conduct of one wrongdoer consists of creating a passive condition while the conduct of the other is active and proximate, the former can seek a recovery against the latter even

though he has been determined to be negligent to the third person. We recognize the rule announced in these decisions, but to apply it to the case at bar would require a holding that Publix is entitled as a matter of law to recover over. The circumstances do not justify this action. Although the trial court did not make express findings, it did *try* the issues raised by the third party complaint and the answer thereto on the merits. The comments of the trial court are as follows:

"THE COURT: Let the record show that the Court has been fully advised that after a day and a half in listening to testimony and the arguments of counsel in Case Number B-3509, Vernon Fessler versus the Publix Cab Company, and the subsequent pleadings which brought in the Third Party Defendant, the Denver Chicago Trucking Company, a Nebraska Corporation.

"Let the record further show that this Court having been fully advised as to the facts and the law, that it is the decision and judgment of the Court, Number One:

" 'The Complaint against Denver Chicago Trucking Company is dismissed. It is the feeling of this Court that after having listened to this evidence and the law applicable thereto, that there is a definite liability on the part of the Publix Cab Company, a Colorado Corporation, or the defendant in this matter.' "

The Court then made this additional comment:

"THE COURT: The Court at this time wishes to amend the decision heretofore entered and discussed just a few moments ago relative to the dismissal of the matter against Denver Chicago Trucking Company.

"Let the record further show that the dismissal is based both on the law and on the evidence.

"That is all."

Thus the trial judge did not deny the right of Publix to *pursue* its action against Denver-Chicago. Instead, it ruled that Denver-Chicago was not liable on the merits. In view of this, we are not disposed to disturb these rul-

ings on the existence of negligence and contributory negligence.

In view of the above conclusion, it is unnecessary to respond to the contention of Denver-Chicago that the trial court's ruling is justified (in any event) by the principle that there can be no action over against an employer for the amount of a judgment recovered by an employee where the employer is covered by the Workmen's Compensation Act.

4. *The damage question.*

Plaintiff was awarded judgment of $7500.00. This was based upon testimony that he was totally disabled for a period of three weeks and that his medical expenses totalled $178.00. However, testimony at the trial indicated that plaintiff was suffering from a degenerated intervertebral disc and that he had a permanent disability amounting to 6% or 7%. We are not impressed with the argument of Publix that "the judgment * * * is so large that it indicates that the Court was motivated by prejudice." The question of the amount of the damages was a matter for determination by the trial court upon all the evidence, and we find no basis for setting it aside on the ground that it is excessive as a matter of law.

Finding no reversible error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE KNAUSS and MR. JUSTICE SUTTON dissent.

MR. JUSTICE SUTTON dissenting.

I respectfully dissent from the majority opinion.

The cab driver was called on a *direct wire* to come to the Denver-Chicago office. He did so and came to the place requested. The evidence that the company dispatcher had ordered other cab drivers not to enter the yard at prior times does not necessarily show that this cab driver had been so instructed or make him negligent. The space in which he parked was not one that

would be used by any of Denver-Chicago's trucks at that late hour of the night. If the cab driver had any duty to anticipate that the truck would move, under these facts it would be logical and reasonable to assume that the truck would move forward, not backwards, where it had no reason, and very little distance it could go.

I also cannot subscribe to the theory that the posting of no trespassing signs by Denver-Chicago means that Publix could not enter on business when called to do so as happened here. This is particularly true in view of my comment above relating to absence of testimony showing that this driver had been warned not to do so.

True it is that a carrier owes the highest degree of care to its passengers, both in loading and unloading, as well as in traveling. That does not mean, however, that the carrier is an insurer of all persons coming in contact with its vehicle regardless of the circumstances. It "should not be charged with negligence without some proof of knowledge of the danger to be apprehended. No one can be required to guard against a danger which neither they nor the injured party supposed to exist." *Fairmount Cemetery Assoc. v. Davis* (1894), 4 Colo. App. 570, 36 Pac. 911.

The mere happening of the accident under the facts here presented does not raise an inference of negligence on the part of Publix as in res ipsa loquitur cases. Negligence is never presumed. I repeat, the happening of an accident carries no inference of negligence. *Perry Lumber Co. v. Ruybal* (1956), 133 Colo. 502, 297 P. (2d) 531.

Fessler, who was probably more familiar with the dock area than the cab driver evidently anticipated no danger, however, that would not excuse the cab driver if he should have seen he was stopping in a dangerous position. To say that this cab driver was negligent under these facts is to say that he should not have responded to the call, or having done so should not have driven to the exact location where it was intended and expected he would drive to pick up his passenger.

In *Jacobsen v. McGinniss* (1957), 135 Colo. 357, 311 P. (2d) 696, this court disposed of a contention similar to Fessler's when it said:

"To say that in such circumstances Jacobsen was contributorily negligent would be to say that he should not have been on the road at that time in the morning, or better still, should have stayed at home."

I think the conclusion inescapable from the undisputed facts disclosed by this record that the sole and proximate cause of the accident and the resulting injury to the plaintiff was the action of the driver of Denver-Chicago in negligently backing the truck into the cab without warning of any kind. Publix was nothing more than the passive intermediate instrument through which Denver-Chicago, by the negligence of its servant, inflicted injury upon the plaintiff.

Though plaintiff here was going to his hotel after checking in from his truck run, he was still in employee's status, thus his injuries arose out of and in the course of his employment. See *Alexander Film Co. v. Industrial Commission* (1957), 136 Colo. 486, 319 P. (2d) 1047, and *Lyttle v. State Compensation Insurance Fund* (1958), 137 Colo. 212, 322 P. (2d) 1049. This would not prevent him though from suing third parties like Publix for alleged negligence. In this connection even if the judgment against Publix were justified I believe the majority decision would still be erroneous in not permitting an action over against Fessler's employer whose active negligence resulted in the accident. See *Baugh v. Rogers* (1944), 24 Cal. 2d 200, 148 Pac. (2d) 633, and 101 C.J.S. 455, Sec. 982 b. and c. for a discussion of the division of authority on this point.

I would reverse the judgment against Publix in favor of plaintiff and remand that cause with directions to dismiss the complaint. I would also reverse the judgment dismissing the third party complaint of Publix against Denver-Chicago with directions that it be reinstated to permit Publix to prove its damage for injury to and loss

of use of its cab resulting from the negligence of Denver-Chicago.

MR. CHIEF JUSTICE KNAUSS has authorized me to state that he joins in this dissent.