The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 10, 2019

## 2019COA3

## No. 17CA1381, *Garcia v. Colorado Cab Company LLC* — Torts — Negligence — Rescue Doctrine

In this case, a division of the court of appeals addresses the
limits of the rescue doctrine — a theory of liability that extends a
defendant's liability to a plaintiff who attempted to rescue someone
(1) to whom the defendant owed a duty and (2) who was in danger
because of the defendant's negligence.  The division holds that to
qualify as a rescuer under the doctrine, a plaintiff must have
physically intervened, meaning the plaintiff must have displayed
bodily movement and effort to rescue the person to whom the
defendant owed a duty.

Court of Appeals No. 17CA1381
City and County of Denver District Court No. 16CV30746
Honorable A. Bruce Jones, Judge

Jose Garcia,

Plaintiff-Appellee,

v.

Colorado Cab Company LLC, a Colorado limited liability company, d/b/a
Denver Yellow Cab,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE J. JONES
Navarro and Márquez*, JJ., concur

Announced January 10, 2019

Foster Graham Milstein & Calisher, LLP, Daniel S. Foster, Laura M. Martinez,
Chip G. Schoneberger, Denver, Colorado, for Plaintiff-Appellee

White and Steele, PC, John M. Lebsack, Keith R. Olivera, Dmitry B. Vilner,
Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    Jose Garcia sued Colorado Cab Company for negligence after a person who had been a passenger in one of Colorado Cab's taxis assaulted him on the street.  The district court ruled that Colorado Cab owed a duty of care to Garcia.  A jury determined that Colorado Cab had breached that duty of care and awarded damages.  We conclude that, as a matter of law, Colorado Cab didn't owe a duty of care to Garcia.  So we reverse the judgment and remand the case for entry of judgment for Colorado Cab.

## I.    Background

¶ 2    Late one night, cab driver Ali Yusuf picked up Curt Glinton and Glinton's friend in Denver.  The passengers, both of whom were apparently intoxicated, didn't (and perhaps couldn't) give Yusuf an address to which to drive, but instead told him where and when to turn.  When they got to 44th Avenue and Tejon Street, Glinton told Yusuf to stop.  Yusuf did so, but when he told the passengers the fare was $6.50, Glinton yelled and cursed at Yusuf, who explained the fare and told Glinton to pay.  Glinton then grabbed and punched Yusuf from behind.  (There wasn't a partition between the front and back seats.  There was a panic button, but Yusuf wasn't able to press it.)

¶ 3 Before all this unfolded, Garcia, sitting in his brother's house near the intersection of 39th Avenue and Tejon Street, had called for a cab. Some time later, sitting inside the home, looking out the window, he thought he saw a taxi drive by. (It was dark, so he wasn't sure what company the taxi was from.) Thinking it might be the taxi for which he had called, he followed it for about "two, three blocks."[1] As it turned out, this was Yusuf's cab. When Garcia got closer, he saw the stopped taxi and could hear Glinton and Yusuf arguing. He approached the taxi, asked what was going on, told Glinton to leave Yusuf alone, and told Glinton and Yusuf to stop fighting. Glinton told Garcia to "mind [his] own fucking business." Glinton and Yusuf got out of the cab. Garcia again told Glinton and Yusuf to stop fighting. Glinton then apparently attacked Garcia, who testified that he didn't remember fighting back.

¶ 4 Garcia was hit from behind on the head. (He wasn't sure who hit him.) Glinton got in the driver's seat of the taxi and sped off. But before going too far, he abruptly turned around and drove toward Garcia and Yusuf, who were standing in a parking lot entry

[1] Given the address from which Garcia saw the taxi go by, he must have walked almost five blocks.

lane.  Glinton swerved toward Garcia and Yusuf.  Yusuf jumped out of the way, but Glinton hit Garcia with the taxi, ran him over, and dragged him down the street.

¶ 5     Garcia's injuries were extensive — they included shattered ear drums, a traumatic brain injury, a fractured eye socket, three broken ribs, a torn anterior cruciate ligament, other torn ligaments, and more injuries causing hip and back pain.  To recover for these injuries, Garcia sued Colorado Cab and Yusuf.[2]  As to Colorado Cab, he alleged that the company's negligent failure to take safety measures, such as installing partitions and security cameras in the taxi, caused his injuries.  He also asserted a claim of unjust enrichment against Colorado Cab.

¶ 6     Colorado Cab moved for summary judgment, arguing that it didn't owe Garcia a duty of care and that any breach of such a duty hadn't proximately caused Garcia's injuries as a matter of law.  The district court denied the motion.  At trial, Colorado Cab twice moved for a directed verdict based on the same arguments; the court denied those motions as well.

---

[2] Garcia dropped his claims against Yusuf at trial after Yusuf testified.

¶ 7　　The jury found in Garcia's favor on the negligence claim, and the court entered judgment against Colorado Cab.  The district court denied Colorado Cab's subsequent motion for judgment notwithstanding the verdict, reasoning that a common-carrier/passenger relationship between Colorado Cab and Garcia gave rise to a duty of care; Colorado Cab owed a duty of care to Yusuf, as an employee; and, because of the duty of care owed to Yusuf, the "rescue doctrine" also supported imposing liability on the company.

## II.　Discussion

¶ 8　　Colorado Cab appeals the district court's determination that it owed Garcia a duty of care, the decision to submit the issue of proximate cause to the jury, and the denial of its motion for post-verdict setoff of Garcia's medical bills that were covered by Medicaid.[3]  Because we conclude that, under the circumstances of

---

[3] Garcia initially cross-appealed the court's denial of his unjust enrichment claim.  But in his answer brief, he makes no argument concerning that claim, saying instead that the court didn't rule on it and that we should remand for a determination of that claim in the event we reverse the judgment on the jury's verdict.  The district court said, however, that it had made a "final determination" of that claim.  It was therefore incumbent on Garcia to argue on appeal

this case, Colorado Cab didn't owe Garcia a duty of care to protect him against attacks from former taxi passengers, we needn't address the other two issues.

### A.    Standard of Review

¶ 9    Colorado Cab first argues that the district court erred in determining that it owed Garcia a duty of care.  Because the existence and scope of a duty are questions of law, we review the district court's decision de novo.  *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 465 (Colo. 2003).

### B.    Discussion

#### 1.    Common Carrier/Passenger

¶ 10    Since Garcia alleges that Colorado Cab's failure to take safety measures caused his injuries, this is a case involving nonfeasance — the defendant's failure to prevent harm — rather than misfeasance — active misconduct creating harm.  *See Davenport v. Cmty. Corr. of Pikes Peak Region, Inc.*, 962 P.2d 963, 967 n.6 (Colo.

---

why the court's denial of that claim was wrong in order to keep that claim alive.  He didn't, so it isn't.

1998).[4]  In such cases, a duty exists only if there is a "special relationship" between the plaintiff and the defendant.  *See N.M. v. Trujillo,* 2017 CO 79, ¶ 3; *Davenport,* 962 P.3d at 967; *Perreira v. State,* 768 P.2d 1198, 1214-15 (Colo. 1989).  Such special relationships include common carrier/passenger, possessor of land/invited entrant, possessor of land/licensee, employer/employee, and hospital/patient.  *See* § 13-21-115, C.R.S. 2018 (Premises Liability Act); *Univ. of Denver v. Whitlock,* 744 P.2d 54, 58 (Colo. 1987).

¶ 11     Denying Colorado Cab's motion for judgment notwithstanding the verdict, the district court ruled that Colorado Cab owed Garcia a duty of care for several reasons, including that there was a

---

[4] To the extent the district court viewed this case as one of misfeasance, rather than nonfeasance, we conclude the court erred. Colorado Cab didn't take any action to harm Garcia.  According to Garcia, it merely failed to install certain safety devices to protect its cab drivers.  The fact Yusuf may have called out for help wasn't, in our view, an act increasing a risk of harm to passers-by like Garcia. It remained Garcia's choice whether to intervene, call 911, or do nothing.

common-carrier/passenger relationship between them.[5]  We disagree.

¶ 12    A common carrier generally owes its passengers a heightened duty of care.  *See Publix Cab Co. v. Fessler*, 138 Colo. 547, 552-53, 335 P.2d 865, 868 (1959) ("The carrier-passenger relationship . . . [required the cab company] to exercise the highest degree of care and the slightest deviation from this constitutes negligence toward the passenger.").

¶ 13    In *Publix Cab*, on which the district court relied, the supreme court applied this heightened duty to a passenger who hadn't yet entered a vehicle.  The plaintiff had called a cab to a trucking terminal.  *Id.* at 550, 335 P.2d at 867.  Ignoring posted signs, the cab driver drove into the terminal and waited there for the plaintiff. *Id.*  As the plaintiff approached the left rear door to get into the cab, a truck began backing into it, causing the plaintiff to be thrown to the ground, injuring his back and hip.  *Id.* at 550-51, 335 P.2d at 867.  The court held that the cab company owed a duty to the plaintiff to provide a safe place for him to be received, and that the

_____

[5] Garcia hasn't asserted that any other "special relationship" existed between him and Colorado Cab.

7

company breached that duty by entering the trucking yard despite the posted warnings. *Id.* at 553, 335 P.2d at 868-69.

¶ 14    *Publix Cab* is clearly distinguishable. No evidence showed that Garcia was a passenger or even a prospective passenger of Yusuf's cab. Colorado Cab hadn't dispatched that cab to pick up Garcia; it was mere coincidence that Garcia had called for a cab and that one driven by Yusuf passed the house in which he was awaiting a taxi. And though Garcia followed the taxi for several blocks, he heard the fight — discovering that the cab was already occupied — while he was still at least half a block away. We conclude that, as a matter of law, this isn't enough to create a common-carrier/passenger relationship.[6]

---

[6] Garcia doesn't appear to directly defend the district court's common-carrier/passenger determination. Instead, he urges that there was "a duty to Garcia *akin to that of* a common-carrier/passenger relationship." (Emphasis added.) But he cites no support in law for such a duty, asserting only that simply by calling for a cab a duty arises encompassing any cab that caller might thereafter see. And he makes no effort to justify imposition of such a direct duty based on the relevant factors identified in Colorado case law, such as *Taco Bell, Inc. v. Lannon*, 744 P.2d 43 (Colo. 1987).

## 2. The Rescue Doctrine

¶ 15    Colorado Cab could still be liable for Garcia's injuries if (1) it was negligent with respect to Yusuf and (2) Garcia was Yusuf's rescuer.  (Garcia made this argument to the district court, and both parties discuss Garcia's rescuer status extensively on appeal.)  But we conclude that, even viewing the facts in the light most favorable to Garcia, he wasn't a rescuer.[7]

¶ 16    The rescue doctrine extends a defendant's liability to a plaintiff who attempts to rescue someone (1) to whom the defendant owed a duty and (2) who was in danger because of the defendant's negligence.  The Restatement (Third) of Torts explains that

> if an actor's tortious conduct imperils another . . . , the scope of the actor's liability includes any harm to a person resulting from that person's efforts to aid or to protect the imperiled person . . . , so long as the harm arises from a risk that inheres in the effort to provide aid.

Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 32 (Am. Law Inst. 2010).  Unless the rescuer suffers a different harm than would reasonably be anticipated by the rescue,

---

[7] For this reason, we don't address whether Colorado Cab owed a duty to Yusuf.

the defendant's liability extends to the rescuer.  *Id.* at cmts. b, c; *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 44, at 307-08 (5th ed. 1984).

¶ 17      Colorado cases discussing the rescue doctrine require that the rescuee have been "in imminent peril, requiring immediate action to avoid physical harm."  *Connelly v. Redman Dev. Corp.*, 533 P.2d 53, 55 (Colo. App. 1975) (not published pursuant to C.A.R. 35(f)) (citing *Maloney v. Jussel*, 125 Colo. 125, 241 P.2d 862 (1952)).  But for the doctrine to apply, more is required.  The nature of the purported rescuer's conduct is also critical.  Examples of qualifying rescue scenarios include "where one impulsively dashes in front of a swiftly moving vehicle to rescue a child from its path, or plunges into a raging stream to save a drowning victim of the flood."  *Maloney*, 125 Colo. at 135, 241 P.2d at 867.  These examples indicate that to be deemed a rescuer, the plaintiff must have taken some concrete physical action — that is, some bodily movement and effort — to save the other person from imminent peril.

¶ 18      Case law from other jurisdictions supports this notion.  There must have been

> some act of intervention, e.g., moving a vehicle, searching for a missing person, attempting to restrain a horse, running into a burning building, flagging down traffic, administering first aid, moving a burning barrel, or jumping into a swimming pool. . . . It is not reasonable that the rescue doctrine be extended to all who run to the scene of a calamity to see what happened and on the chance that they might be able to do some good.

*Barnes v. Geiger*, 446 N.E.2d 78, 82 (Mass. App. Ct. 1983) (discussing the "common thread" of active, physical intervention in cases recognizing the rescue doctrine); *see also Hassanein v. Avianca Airlines*, 872 F. Supp. 1183, 1187-88 (E.D.N.Y. 1995) (applying New York law); *Lambert v. Parrish*, 492 N.E.2d 289, 291 (Ind. 1986) ("We hold that a rescuer must in fact attempt to rescue someone. A rescuer is one who actually undertakes physical activity in a reasonable and prudent attempt to rescue."); *Stevenson v. Delahaye*, 310 So. 2d 651, 653-54 (La. Ct. App. 1975); Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 32 illus. 1-5.[8]

---

[8] This requirement of physical intervention appears also to be implicit in the meaning of "rescue." *See* Webster's Third New International Dictionary 1930 (2002) (defining to "rescue" as "to free from confinement, violence, danger, or evil").

¶ 19    There was, to be sure, evidence that Yusuf was in imminent peril. But Garcia merely approached the cab and told Yusuf and Glinton to stop fighting. There's no evidence in the record that he attempted to physically intervene; he didn't, for example, get between the two men or try to pull one away from the other. *Cf. Schwartzman v. Del. Coach Co.*, 264 A.2d 519, 519-20 (Del. Super. Ct. 1970) (rescue doctrine didn't apply to one who merely gave a verbal warning of impending peril to another). It follows that the rescue doctrine doesn't apply in this case.

### III.    Conclusion

¶ 20    Because of our conclusions that there was no common-carrier/passenger relationship and Garcia wasn't a rescuer, there was no basis for extending any duty to Garcia. So the district court erred in denying Colorado Cab's directed verdict and post-trial motions.[9]

¶ 21    The judgment is reversed, and the case is remanded to the district court to enter judgment in Colorado Cab's favor.

JUDGE NAVARRO and JUDGE MÁRQUEZ concur.

---

[9] Because of our resolutions of the issues addressed, we need not consider any of Colorado Cab's other issues on appeal.

12