No. 12,237.

Newton *v.* Board of County Commissioners of the County of Weld.

Decided November 25, 1929.

Mr. Thomas A. Nixon, Mr. Herbert E. Mann, for plaintiff in error.

Mr. William R. Kelly, for defendant in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

Plaintiff Newton, who has a state license to practice medicine in Colorado as an osteopathic physician, for himself, and others similarly situated, brought this action against the board of county commissioners of Weld county, Colorado, to enjoin the enforcement by the board of its general policy embodied in its adopted resolution, the purpose as well as the effect of which is to bar osteopathic physicians from practicing their profession in the two existing county hospitals, which the board of commissioners was by statute empowered to erect and maintain for the care and treatment of indigent persons residing in the county, and also for the care and treatment for pay of other residents of such county, while it permits only allopathic and homeopathic physicians to practice therein. The district court sustained the general demurrer of the defendant board to the complaint and dismissed the action at plaintiff's costs.

For convenience only we use in the opinion the same classification which the plaintiff himself does in his briefs: "regulars," for those physicians who belong to the allopathic and homeopathic, "irregulars," for those who belong to the osteopathic, school of medicine.

The long complaint is replete with allegations of conclusions of law so interwoven with averments of fact as to render it difficult to determine what part of the

pleading is fact, and what part is conclusion. The defendant has not seen fit by appropriate objection to have these defects in the complaint cured. On the contrary, the only pleading filed by the defendant is a demurrer for insufficient facts, which, as above stated, was sustained on the ground that the defendant's policy of permitting only the "regulars" to practice in its hospitals is not obnoxious to the constitutional and other objections urged by the plaintiff. The complaint alleges that the defendant board in a resolution, reciting that in order to maintain a high standard of scientific work, and to conform to the minimum requirements of hospital standardization, as laid down by the American College of Surgeons, established certain rules and regulations, the effect of which, if enforced, as the board has consistently done and proposes to do in the future, is to grant to the "regular," and to withhold from the "irregular," physicians, including the plaintiff, the privilege to practice in defendant's hospitals, though before this policy was adopted the "irregulars" were permitted to practice therein on the same terms as the "regulars." The complaint alleges that by the adoption of this resolution the plaintiff, a citizen and resident taxpayer of Weld county, has not been allowed to practice his profession in the county hospitals while the "regulars" enjoy such privilege, greatly to his injury and contrary to the provisions of the Constitutions of the state and of the United States, in various particulars hereinafter mentioned.

As the decision was made upon a general demurrer to the complaint, all allegations of the complaint well pleaded are to be taken as true. Many of its allegations, however, as already stated, are of such character as not to constitute allegations of fact, as distinguished from conclusions of the pleader. The trial court, having sustained the demurrer to the complaint, declined to make the various findings of fact which the plaintiff submitted, but dismissed the action.

Authority for the erection of these hospitals is found

in chapter 143 of the Session Laws of 1925, p. 410. As Weld county has a population of more than 10,000 inhabitants its board of county commissioners by this act was authorized to, and it did, establish, equip and maintain these two hospitals for the care and treatment of indigent persons residing in such county, and also for the care and treatment, for pay, of other residents of the county. The sole control and management of these hospitals are vested in the county board. The questions for determination are thus indicated by plaintiff's assignments of error: The court erred in exclusively recognizing allopathic therapeutics and practitioners in the hospitals; the effect of the decision is to deny to residents of the county freedom of choice in the selection of their physician and surgeon while in the hospitals, and, on the contrary, imposes on the community generally its choice of physician and surgeon; that thereby was conferred on one branch of the medical profession exclusive privileges and immunities in hospitals that are maintained at the expense of the public; it established allopathic therapeutics as the state's system of medicine in the hospitals. The general objections urged are those stated, and that the resolution of the board bears no substantial relation to, or benefit to, public health; that such hospitals must be for the benefit of all the people of the county and not for a limited class; that this resolution is unfair and partial and as administered is arbitrary and oppressive; that its passage is not within the lawful police powers of the state or the county; that it is against the laws and public policy of the state; that it is abhorrent to our system of government; it creates a monopoly in the use of common property; it deprives residents of the county of the right to employ their own physician and surgeon while confined in the hospital and at the same time compels them to assist in maintaining it by the payment of taxes. It is an arbitrary and unreasonable exercise of powers and discriminates against one class in favor of another class of citizens; that if a general rule can be made applicable for

450

the successful operation of hospitals, a special rule like this against certain groups is improper; that it results in the expenditure of public funds in aid of a private enterprise. Such are the objections, redundant perhaps, which the plaintiff himself summarizes as vitiating the judgment dismissing the action.

These various objections to the judgment may fairly be condensed into a very few general statements. Indeed, we think that the question for decision upon this record is whether the plaintiff, who is an osteopathic physician, is deprived of his rights under the privileges and immunities clause of the state and federal Constitutions, and the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. We are relieved of the necessity for any extended discussion because of the recent decision of the Supreme Court of the United States, the highest and controlling authority in such questions, in the case of *Hayman v. Galveston*, 273 U. S. 414, 47 Sup. Ct. 363, 71 L. Ed. 714. In all substantial particulars the case in hand is like the Hayman case. Hayman, a resident of Texas and an osteopathic physician, duly licensed to practice medicine in that state, just as Newton, an osteopathic physician is licensed to practice medicine in Colorado, brought suit in the federal district court for Southern Texas against the city of Galveston and others to enjoin the enforcement of any rule or regulation excluding Hayman, or other osteopathic physicians, from practicing their profession in the hospital, and denying admission to patients who wished to be treated by appellant or other osteopathic physicians. The bill in the Hayman case alleged that: "The board of Regents of the State University had leased land to appellee, the City of Galveston, on which it was maintaining a municipal hospital in accordance with the provisions of the lease." There was a stipulation in this lease that the "state reserves the right of use of the operating amphitheatre, the wards and grounds of the hospital, by the faculty of the Medical Department of the State Uni-

versity, for purposes of clinical instruction of medical students attending the University in Galveston." Certain other reservations included in the lease are not important here. The lease further provided that the hospital should be maintained and controlled by a hospital board, which was given exclusive right to prescribe rules and regulations for the management and conduct of the hospital. The bill alleged that the managers had made regulations excluding Hayman and other licensed osteopathic physicians from practicing in the hospital and excluding patients who desired to be treated by physicians of the osteopathic school. The district court dismissed this bill for want of equity and the case went by appeal to the Supreme Court of the United States. The court in its opinion by Mr. Justice Stone, all of the justices concurring, assumed that the question presented is the same as though the state legislature had enacted the resolution adopted by the hospital board, and concluded that there was no substantial basis for asserting that any rights guaranteed to Hayman by the due process clause, or by the Fourteenth Amendment to the federal Constitution had been infringed. The court further said that there does not appear to be any substantial basis for urging that the action of the board abridges any privileges or immunities of a citizen of the United States, and while the bill in that case did not allege that Hayman was a citizen of the United States, the court said that the protection of the due process clause of the federal Constitution extends as well to persons who are non-citizens as well as citizens. And the court said, what is significant and controlling with us, the following:

"But the only protection claimed here is that of appellant's privilege to practice his calling. However extensive that protection may be in other situations, it can not, we think, be said that all licensed physicians have a constitutional right to practice their profession in a hospital maintained by a state, or a political subdivision, the use of which is reserved for purposes of medical instruction.

It is not incumbent on the state to maintain a hospital for the private practice of medicine. Compare *Heim v. McCall*, 239 U. S. 175.

"But it is argued that if some physicians are admitted to practice in the hospital all must be or there is a denial of the equal protection of the laws. Even assuming that the arbitrary exclusion of some physicians would have that legal consequence in the circumstances of this case, the selection complained of was based upon a classification not arbitrary or unreasonable on its face. Under the Texas constitution and statutes, anyone who shall 'offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method or to effect cures thereof' is a physician and may be admitted to practice within the state. * * * We cannot say that a regulation excluding from the conduct of a hospital the devotees of some of the numerous systems or methods of treating diseases authorized to practice in Texas, is unreasonable or arbitrary. In the management of a hospital, quite apart from its use for educational purposes, some choice in methods of treatment would seem inevitable, and a selection based upon a classification having some basis in the exercise of the judgment of the state board whose action is challenged is not a denial of the equal protection of the laws. Compare *Collins v. Texas*, 223 U. S. 288; *Watson v. Maryland*, 218 U. S. 173; *Crane v. Johnson*, 242 U. S. 339; *Jacobson v. Massachusetts*, 197 U. S. 11.

"The validity of the action of the board under the Texas constitution is also before us. * * * The Texas constitution provides: 'The legislature may pass laws prescribing the qualification of practitioners of medicine in this state, and to punish persons for malpractice, but no preference shall ever be given by law to any schools of medicine.'

"The limitation of the provision is obviously directed to the qualifications of those to be admitted to the practice of their profession in the state and has nothing to do

with the qualifications of those who are to be allowed to practice in a state hospital or to participate in an educational enterprise conducted by the state. * * * The action of the board does not violate rights or immunities guaranteed by either the state or the Federal Constitution.''

We have made the extended quotations from the opinion of Justice Stone in the Hayman case chiefly because his argument and statements are a complete answer to the contentions of the plaintiff in the case we are now considering, and because decisions of the Supreme Court of the United States are controlling and should be, and generally are, followed by all inferior judicial tribunals, federal and state, in such matters as are involved in this case. Our own legislature provides for the licensing of those who desire to practice osteopathy as well as those who desire to practice allopathy or homeopathy.

█ Provision has been made for granting of licenses to practitioners of the various systems or schools of medicine but, as said by the Supreme Court of the United States in the Hayman case, the provision, that preference shall not be given to any school of medicine, is limited to the qualification of those to be admitted to the practice of the profession in the state and has nothing whatever to do with the qualifications of those who are to be allowed to practice in a public hospital or in an educational enterprise conducted by the state or by the counties or municipalities of the state.

█ A physician has no constitutional or statutory right to practice his profession in a county hospital. The county board has complete supervision and control of county hospitals in this state. A regulation excluding from the county hospital, or the right to practice therein, the devotees of some of the numerous systems or methods of treating diseases authorized to practice the profession in Colorado is neither unreasonable nor arbitrary. Some choice of methods necessarily exists and we cannot say that in the case at bar the county board of commissioners

454

did not have an adequate basis for its resolution. Neither can we say that this resolution was not justified upon the ground, which abundantly appears from this record, that if the right to practice in the county hospitals is open to all the different schools of medicine there would be constant jealousies and dissatisfaction between the rival schools of medicine which probably might or would greatly lessen the usefulness of the public hospital. The court cannot substitute its judgment for that of the county board. Not being contrary to any provision of the federal or state Constitution or of the laws of the state, its determination cannot be set aside by us. The judgment is therefore affirmed.