No. 17,649.

CITIZENS UTILITIES COMPANY, ET AL. *v.* CITY OF
ROCKY FORD, ET AL.
(289 P. [2d] 165)

Decided October 24, 1955.

Messrs. LEE, BRYANS, KELLY & STANSFIELD, Mr. BRYANT O'DONNELL, Messrs. THULEMEYER & STEWART, Mr. PERRY E. WILLIAMS, for plaintiffs in error.

ELIZABETH L. GUYTON, Mr. MYLES' P. TALLMADGE, Mr. ROBERT C. TALLMADGE, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

PLAINTIFF in error Citizens Utilities Company is a corporation authorized and qualified as a foreign corporation to do business in the State of Colorado. It is engaged in the business of distributing natural gas in the State of Colorado, and particularly in the city of Rocky Ford, which is a city of the second class and not a home rule city.

For some time prior to September 8, 1954, defendants in error had entertained the idea of promoting a plan for a municipally owned gas distribution system by acquiring by purchase or condemnation, the system operated by plaintiff Utilities Company, or by constructing a new distribution system.

In furtherance of this plan two ordinances were introduced before the city council on September 8, 1954, known as Ordinance No. 377, Series of 1954, and Ordinance No. 378, Series of 1954. Ordinance No. 377 was titled as follows:

"An ordinance adopting a plan for the acquisition of a natural gas distribution system to be owned and operated by the City of Rocky Ford, Colorado, describing the property to be acquired, the full purchase price to be paid therefor, the method of payment and the total obligations to be incurred."

Ordinance No. 378 was titled as follows:

"An ordinance calling a special election, to be held in the City of Rocky Ford, Colorado, on the 14th day of October, 1954, at which there shall be submitted to the taxpayers of said City the question of authorizing the acquisition of a municipally owned natural gas distribution system for said City, and at which election there shall be submitted to such of the qualified property electors of said City as shall in the year next preceding the year of election have paid a property tax, the question of approving Ordinance No. 377, adopting a plan for the acquisition of a municipally owned natural gas distribution system for said City."

Both ordinances went through the appropriate channel for regulation adoption, and both were finally passed and adopted on September 20, 1954. Pursuant to Ordinance No. 378 a special election of taxpaying electors was duly called and held in said city on October 14, 1954, whereat separate ballots were provided for the electors on two questions:

(1) "Shall the City of Rocky Ford be authorized to acquire a municipally owned natural gas distribution system for said City and its inhabitants, as provided by Ordinance No. 377 of said City?"

(2) "Shall Rocky Ford Ordinance No. 377 adopting a plan for the acquisition of a municipally owned natural gas distribution system be approved?"

It is apparent that in the adoption of said ordinances the city council attempted to conform with the provisions of the laws of Colorado of 1927 appearing as chapter 137, section 37, '35 C.S.A., and the laws of 1899, appearing as chapter 163, section 10, subdivision 67, '35 C.S.A.

Following the election, and on November 15, 1954, plaintiff Utilities Company filed a complaint in the district court of Otero county alleging their engagement in the business of distributing natural gas in the city of Rocky Ford and elsewhere; that plaintiffs are owners of real and personal property and are taxpayers; and other factual allegations, the principal allegation being that the action of the mayor and city council were wholly void; that Ordinance No. 377 setting forth the plan of acquisition did not allow the voters to determine whether or not the acquisition should be accomplished by constructing a new system or by purchasing or condemning the present system; that the entire matter was an unlawful delegation by the voters to the city council by allowing the city council discretion in determining whether to purchase or construct; that the ordinances did not properly describe the property which was to be acquired, nor the amount which would ultimately be spent by the city in the construction or acquisition of such a system, the rate of interest or the maturity date or redemption provisions of the bonds to be issued; that defendants be restrained and enjoined from proceeding toward acquisition and from selling or offering for sale the purported revenue bonds; and further, that the ordinances be declared illegal and in contravention of the Constitution, the laws and public policy of the state.

A motion to dismiss the complaint was filed, and on January 10, 1955, the court had a hearing and after arguments were presented on the petition and the motion to dismiss, all were submitted for a ruling. The court denied the motion to dismiss and made findings to the effect that plaintiffs were proper parties; that the ordinances had been approved by the voters; and the city council

was able to authorize the issue of the revenue bonds; and then, in its conclusions of law determined that the distribution system for natural gas here in effect or proposed is a part of a "gasworks"; that the election held on October 14 substantially complied with the statutes of the state; denied the petition for injunction; and dispensed with a motion for new trial.

It is quite clear from the conclusions of law that according to the contentions of defendants, that the city was relying upon the law of 1899, being now C.R.S. '53, 139-32-1 (34), the material part of which is as follows:

"Water, gas and electric works—To purchase or erect waterworks, gasworks, or electric light works; or to authorize the erection of the same by others * * *."

■ ■ The meaning of this statute when construed in the light of subsequent events, must be discovered by giving consideration to the language of the statute as it was understood at the time of its enactment. No new meaning can be given thereto because of changed conditions. This statute cannot be construed as broad enough to include a *natural* gas distribution system. The very wording of the statute when applied to conditions existing at the time of its passage, if defendants' contention be considered at all, certainly provokes a doubt, to say the least, as to the meaning of "gasworks," and invoking the well-settled rule, if a doubt exists as to the power of a municipality to create or acquire a natural gas distribution system under this statute, then such doubt is resolved against the municipality. Since municipal corporations are creatures of statute, they are confined to the powers specifically granted thereby. Notice is to be given to the fact that in 1899 distribution of natural gas was unknown. Such gas as was available for use at that time was artificial gas, manufactured in what may be termed a "gasworks," and distributed by its particular system, and it follows that a word used in the statute of that date does not include everything to which that word may be applied at the present time. At that time the leg-

islature could not have contemplated that municipalities in the state of Colorado would, at the present time, be using natural gas, and therefore the word it employed at that time could have referred only to artificial or manufactured gas. This is doubly apparent from the 1929 amendment to article 41, chapter 139, C.R.S. '53, wherein by section 1 concerning franchises granted by ordinance, the additional words "* * * gas plant or system * * *" follow the word "gasworks." We cannot accept the statement of the trial court in its conclusions of law "that the Act of 1899, C.R.S. '53, 139-32-1 authorized the acquisition of gasworks by a municipality and that a system for the distribution of natural gas is a part of a gasworks." If it could be said that the statute contemplated the acquisition of a natural gas distribution system, it did not authorize the acquisition of a "part of a gasworks."

Plaintiff Utilities Company contends that the plan ordinance No. 377, submitted to the voters, did not conform to the statute C.R.S. '53, 139-42-1, which in exact language provides for what must be included in such a so-called plan ordinance. The pertinent statute is as follows:

"* * * no public utility shall be acquired until the plan for such acquisition shall have been adopted by ordinance, and such ordinance approved by a majority of the qualified property electors of such city or town, * * *.

"Such ordinance shall describe the property to be acquired; the full purchase price to be paid by such city or town therefor and the method of payment thereof, as well as the total obligations to be incurred by such city or town, in making such acquisition, whether by way of general obligation bonds of such city or town, issued under the provisions of section 8, article XI of the constitution of the state of Colorado or by way of obligations chargeable solely or in part against the income of such utility, or both. In event of the issuance of obligations payable solely out of income, all operating and other

costs shall be met solely out of income of the utility acquired."

It cannot be questioned that this statute by its mandatory provisions discloses that a plan under such ordinance must give an accurate description of the property to be acquired, the full purchase price thereof, the exact method of payment, and the total obligation to be incurred. That our conclusions be more readily understood and received, we set out the ordinance No. 377 as here submitted:

"AN ORDINANCE ADOPTING A PLAN FOR THE ACQUISITION OF A NATURAL GAS DISTRIBUTION SYSTEM TO BE OWNED AND OPERATED BY THE CITY OF ROCKY FORD, COLORADO, DESCRIBING THE PROPERTY TO BE ACQUIRED, THE FULL PURCHASE PRICE TO BE PAID THEREFOR, THE METHOD OF PAYMENT AND THE TOTAL OBLIGATIONS TO BE INCURRED.

"WHEREAS, the City Council of the City of Rocky Ford, Colorado, deems it advisable for the City to acquire a natural gas distribution system to be owned and operated by the City; and

"WHEREAS, no public utility may be acquired until the plan for such acquisition shall have been adopted by ordinance and such ordinance is approved by a majority of those persons voting who are qualified electors of the City and who in the next year preceding the year of election paid a property tax therein;

"THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF ROCKY FORD, OTERO COUNTY, COLORADO, that:

"Section 1. The City of Rocky Ford, Colorado, shall acquire a natural gas distribution system to be owned and operated by said City.

"Section 2. The plan for such acquisition is for the City to acquire the present gas distribution system of Citizens Utilities Company, now located and operating in the City, if such system can be acquired at a price

considered satisfactory to the City Council, otherwise, by erecting and installing a complete and adequate system for distributing natural gas to the City and its inhabitants and all others who may be lawfully served thereby. The plan contemplates that the City will purchase natural gas at the best rate obtainable for distribution by such system.

"Section 3.   The property to be acquired for such system shall consist of gas mains and laterals, service lines and meters with all necessary connections, structures, equipment, appurtenances and incidentals for a complete and adequate gas distribution system.

"Section 4.   The full purchase price to be paid for such property shall not exceed $203,940, the exact amount depending on the purchase price or the cost of erection and installation.

"Section 5.   The method of payment for the property to be acquired is by means of revenue obligations chargeable solely against and out of the net income of such system.

"Section 6.   The total obligations to be incurred by the City in making such acquisition will be an amount not exceeding $225,000, the difference between the full purchase price to be paid for said property and the total obligations to be incurred, is to provide for engineering and legal expenses, cost of financing, interest, incidentals and contingencies.

"Section 7.   The revenue bonds to be issued by the City shall bear interest at the lowest interest rate obtainable, and shall mature serially within 20 years after their date, with such redeemable date or dates as will be to the advantage of the City.

"Section 8.   All ordinances or parts thereof in conflict herewith, are hereby repealed.

"Section 9.   This Ordinance shall not become effective until it has been submitted to an election held for that purpose and has been approved by a majority of those persons voting who are qualified property electors of said

City and who shall in the next year preceding the year of election have paid a property tax therein.

"Section 10.   In the event that this Ordinance is approved as aforesaid the City Council and the officers of the City shall be authorized and directed promptly to take and adopt all steps and proceedings necessary or proper fully to carry out the intent and purpose of this ordinance.

"INTRODUCED, read and ordered published this 8th day of September, A.D. 1954."

A casual study of this ordinance reveals that a dual proposition was submitted to the voters and no opportunity afforded for the right to express a preference, whether the city should acquire by purchase *or* by construction, and it does not set out the full purchase price, the method of payment, or the rate of interest, with the result that the voter blindly gave this wide and unlawful delegation of discretion to the city council. This is to be seen by the words "If such system can be acquired at a price considered satisfactory to the City Council," and further, if the city council did not consider the price satisfactory a new system could be erected. The ordinance provides that the full purchase price shall not exceed certain named sums, and that the bonds bear interest at the lowest rate obtainable, and be redeemed at dates advantageous to the city.

In face of the statute of 1927 quoted above, requiring that all material matters be set out for disposition by the voters, it is quite evident that all matters of consequence concerning the acquisition of a gas system was delegated to the city council, to be exercised by it in an unlawful and wide discretion. The voter had no choice of how the system was to be acquired; however, the majority which voted in favor of the ordinance gave the city council the right to use its own discretion and abandon the protection provided in the statute. This court at an early date condemned the practice here followed. *City of Denver v. Hayes,* 28 Colo. 110, 63 Pac. 311,

and cases cited therein. We are unable to see wherein the plan ordinance here under attack specified the exact amount to be paid, or the exact amount of the total obligation to be incurred, or the exact amount of the interest the obligations were to bear. Unless these material aspects are clear, the ordinance falls far short of the statutory requirement.

█ Courts generally are hesitant to interfere with a will of the people as expressed in an election; however, where public funds are involved and it is clear that the so-called expression of the majority of the voters does not reflect a true understanding of all matters involved, we feel duty bound to reject the ill-advised action. Courts should, and do, attempt to protect the people against incurring indebtedness where it appears that such is incurred without a full understanding of the true import of the indebtedness proposed.

█ It is contended by defendants that the lower court was in error in determining that plaintiffs were proper parties. It is not disputed that plaintiff Utilities Company is a taxpayer and has a sizable investment that is here jeopardized. These two facts are sufficient under the circumstances for it to maintain this action for its own protection.

As indicated, the judgment of the trial court is reversed and the cause remanded with instructions to reinstate the complaint and grant the prayer for relief.