Lynne SILVERSTEIN,
Plaintiff-Appellant,

v.

SISTERS OF CHARITY OF LEAVEN-WORTH HEALTH SERVICES CORPO-RATION, and Saint Joseph Hospital, Inc., Defendants-Appellees.

No. 78–135.

Colorado Court of Appeals,
Div. III.

Dec. 20, 1979.

Rehearing Denied Feb. 21, 1980.

Certiorari Denied June 30, 1980.

---

9. Sections 18–4–203 and 18–2–101, C.R.S. 1973 (1978 Repl. Vol. 8).

Bruce C. Bernstein, Denver, for plaintiff-appellant.

Holme, Roberts & Owen, Richard L. Schrepferman, John R. Webb, Denver, for defendants-appellees.

RULAND, Judge.

The plaintiff appeals from a judgment which dismissed her complaint after trial to the court. We affirm in part and reverse in part.

This action was based upon the defendants' refusal to employ the plaintiff as a respiratory therapist. In a prior appeal between the parties, this court affirmed the trial court's dismissal of the plaintiff's claims: (1) for damages under § 24–34–801(1)(b), C.R.S. 1973; (2) for exemplary damages under both the state act and § 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794; and (3) for attorney's fees. The trial court's dismissal of her claim for a declaratory judgment under the state act was reversed. *Silverstein v. Sisters of Charity*, 38 Colo.App. 286, 559 P.2d 716 (1976).

Upon remand, trial was held on the plaintiff's claims (1) for damages for breach of contract and for violation of the federal act, and (2) for declaratory judgments that the defendants' policy of refusing to hire anyone with a history of epilepsy in a position involving direct patient care was unlawful under both the federal and state acts. The parties stipulated that the defendants received the funding which makes the state act applicable. They also stipulated that the defendants have a program or activity receiving financial assistance within the meaning of the federal act.

The trial court found that there is a divergence of competent medical opinion regarding the likelihood of future seizures for persons with epilepsy and the possible risks attendant thereto. It further found that there was substantial and respectable medical opinion supporting the reasonableness of the defendants' employment policy. Consequently, the court concluded that the plaintiff was not "otherwise qualified" under the federal act, and that her disability prevented performance of the work involved under the state act. The court also dismissed the breach of contract claim, a ruling which is not involved in this appeal.

## I. The Federal Act

■ Silverstein argues that the trial court erred in finding that she was not otherwise qualified under the federal act and, therefore, wrongfully dismissed her claims for damages and for declaratory relief under that act. We need not reach the merits of this argument since we conclude that, under the circumstances here, the federal statute does not permit an action against this employer for employment discrimination. A correct judgment by the trial court will not be disturbed on review because the reasoning which led to the result is inaccurate. *Metropolitan Industrial Bank v. Great Western Products Corp.*, 158 Colo. 198, 405 P.2d 944 (1965); *Klipfel v. Neill*, 30 Colo.App. 428, 494 P.2d 115 (1972).

■ In *Trageser v. Libbie Rehabilitation Center, Inc.*, 590 F.2d 87 (4th Cir. 1978), *cert. denied*, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979), the Fourth Circuit held that "[a] private action under [the federal act] to redress employment discrimination . . . may not be maintained unless a primary objective of the federal financial assistance is to provide employment." We are persuaded by the *Trageser* court's interpretation of the relevant statutes and its conclusions. *See White v. Anderson*, 155 Colo. 291, 394 P.2d 333 (1964).

■ As in *Trageser, supra,* there has been no allegation in this case that providing employment is a primary objective of the federal aid received by defendants. Rather, the evidence shows that, at the time of the plaintiff's employment application, the only federal aid received by the defendants was in the form of Medicare and Medicaid benefits, and that those funds were provided by the federal government to pay patients' hospital bills. Thus, as in *Trageser*, the plaintiff could not prevail on her claims under the federal act.

## II. The State Act

Silverstein asked the trial court to declare the hospital's exclusionary employment policy violative of the state statute prohibiting discrimination against handicapped persons in employment. Section 24–34–801(1)(b), C.R.S. 1973, provides that otherwise physically disabled persons shall be employed, where the employment is supported in whole or in part by public funds, on the same terms and conditions as the able-bodied, unless it is shown that "the particular disability prevents the performance of the work involved."

Based on uncontroverted facts, the trial court found that the defendant hospital elected not to hire Silverstein solely because of her history of epilepsy. It also found that the hospital's policy with regard to the hiring of persons with a history of epilepsy was to exclude them from positions involving direct patient care and that this restriction did not involve individualized evaluation of each applicant. The court concluded that this employment policy was based upon substantial and respectable medical opinion, and that because of the duty owed by a hospital to its patients, the particular disability, epilepsy, prevented the performance of the work involved.

■ In so ruling, the trial court held that the hospital's policy of excluding persons with a history of epilepsy from positions involving direct patient care was permissible under the state act. This construction of the statute by the trial court allowing such a policy is a conclusion of law which is not binding on an appellate court. *Sunshine v. M. R. Mansfield Realty, Inc.*, 195 Colo. 95, 575 P.2d 847 (1978).

Because our inquiry is limited to deciding whether the hospital's exclusionary policy is permissible under the statute, and because the hospital admittedly rejected Silverstein immediately upon discovering that she had a history of epilepsy, without evaluating the degree of her disability, we do not, of course, determine whether Silverstein was qualified under the statute. Rather, two issues are significant in evaluating the trial court's conclusion. Does § 24–34–801(1)(b), C.R.S. 1973, allow an employer to exclude from certain positions all persons having a particular disability; and, if not, does the fact that the employer is a hospital affect the application of the statute?

The answer to the first inquiry depends on what the General Assembly intended the words "the particular disability" in the statute to mean. The trial court adopted the defendants' interpretation that the General Assembly intended this language to provide, as to certain employment, for the exclusion of physically disabled persons by virtue of the nature of their disability. We conclude that the consequence of such a construction would frustrate the apparent legislative purpose. *See Mooney v. Kuiper*, 194 Colo. 477, 573 P.2d 538 (1978).

■ The legislative intent in enacting this statute was to provide penalties for those employers who exclude handicapped persons from employment solely because of their disability. Section 24–34–802, C.R.S. 1973. The exception provided where a particular disability prevents the performance of the work is a recognition that physical disabilities vary from one individual to another, and that, under some circumstances, the degree of disability may be disqualifying. *See, e. g., Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). Thus, the language of the statute necessarily requires individual consideration of each application to determine whether that person is prevented from performing the work by the particular disability. Consequently, a policy is prohibited which excludes from consideration a group whose members are determined by the nature of their handicap.

There may be cases where individualized consideration of an employment application would require a most cursory analysis, as, for example, if a blind person were to apply for a hospital position where sightedness is obviously necessary to assure patient safety. However, the evidence presented in this case cogently demonstrates why individualized consideration is necessary in order to effectuate the legislative purpose of the act.

While, as the trial court found, there is competent medical testimony to support the hospital's premise that epilepsy is not curable as such and that there is a likelihood of recurring seizures probable for one with a history of epilepsy, the facts pertinent to this particular plaintiff strongly suggest that her alleged disability would not affect her care of patients.

■ Silverstein has been employed as a respiratory technician for approximately eight years in several different hospitals. Each of her employers was acquainted with Silverstein's history of epilepsy. She has treated thousands of patients and has never been involved in any incident in which her epilepsy affected her work in any way. Representatives of two of the hospitals testified that her job performance was excellent. Finally, two physicians who are experts in the field of diagnosis, treatment, and control of epilepsy who had examined Silverstein, testified at trial. In summary, based upon her medical history, one expert opined that Silverstein's condition presented no danger to any patient under her care. The other expert testified that, assuming that Silverstein took the prescribed medication, her chances of having a seizure were one in 1,000, that she was medically qualified to work as a respiratory technician at the hospital, and that he considered her as being completely controlled insofar as the occurrence of a seizure during the daytime. Yet, the hospital's policy precludes *any* consideration of this information in evaluating Silverstein's employment application. In sum, if we were to construe the statute as urged by the hospital, the General Assembly's efforts to enable the physically dis-

abled to participate fully in the social and economic life of the state would be laudable, but substantially ineffective.

The hospital argues, however, that hospitals generally have broad discretion in matters of patient care and, therefore, are given wide latitude in determining hiring policies. It says, in effect, that hospitals, by their very nature, are exempt from the application of § 24–34–801(1)(b), C.R.S. 1973. While we recognize that hospitals have wide discretion with regard to personnel policies because of their duties to patients, *Newton v. Board of County Commissioners*, 86 Colo. 446, 282 P. 1068 (1929), we do not view our holding as interfering with that discretion. It merely requires that the hospital consider each handicapped person as an individual in accordance with the mandate of the General Assembly.

The hospital also contends that the requirements of individualized review of persons with a history of epilepsy is burdensome. The only burden imposed upon hospitals is the burden imposed upon all employers subject to the Act, that is, to provide individualized consideration of physically disabled applicants in order that they may "participate fully in the social and economic life of the state and to engage in remunerative employment." Section 24–34–801(1)(a), C.R.S. 1973.

In view of the conclusions that we have reached, we need not address plaintiff's other contentions.

That portion of the judgment dismissing the claims for damages for breach of contract, and for damages and declaratory relief under the federal act is affirmed. That part of the judgment denying a declaratory judgment that the policy of the hospital violates § 24–34–801(1)(b), C.R.S. 1973, is reversed and remanded with directions to reinstate the complaint and enter judgment for the plaintiff.

BERMAN, Judge, concurs in part and dissents in part:

I would affirm the trial court's judgment in its entirety.

I agree with Part I of the majority opinion which discusses the Federal Act and which approves and follows the holding in *Trageser, supra*. I find the reasoning expressed by the Fourth Circuit most persuasive. While I am aware that the refusal of the Supreme Court to grant certiorari does not necessarily imply agreement with the reasoning or result, nevertheless, I view that refusal in a case of first impression, dealing with so sensitive a subject as aid to the handicapped, a significant matter. It is difficult for me to believe that, if there were any nagging doubts, certiorari would have been denied.

As to Part II of the majority's opinion analyzing the state statute, I disagree.

The majority holds that the trial court frustrated the intent of the General Assembly. I do not accept that analysis.

To prove its point the majority holds that the state statute prevents a per se exclusion. To so rule flies in the face of the facts as found by the trial court and the law. Even if I were to agree with the basic premise as to the per se exclusion, the law holds otherwise. Relying on *Condit v. United Airlines, Inc.*, 558 F.2d 1176 (4th Cir. 1977), the trial court held that "the employment policy need not be individualized as to each applicant *where the risk or danger is one common to the class by virtue of the existence of a disqualifying impairment*." (emphasis added) The court had previously found that the medical opinion which it accepted and found to be based on "substantial and respectable medical opinion . . . holds that one with a history of epilepsy does, with probability constitute a risk that future seizures may be expected." Thus, the appellant's disqualifying impairment in connection with the position which she sought did not require individualized consideration. *Airline Pilots Ass'n International v. Quesada*, 276 F.2d 892 (2d Cir. 1960) which upheld a regulation forbidding commercial air carriers from utilizing pilots beyond the age of 60. *See also Murnane v. American Airlines, Inc.*, 482 F.Supp. 135 (D.D.C.1979) (airlines 40-year age limit for entry-level pilots, which allows them to

require experience needed to maximize safety before forced retirement at age 60, not unlawful under age discrimination in Employment Act.)

At the same time that the majority relies on the invalidity of a per se exclusion rule here, it seemingly jettisons its own premise by acknowledging that "[t]here may be cases where individualized consideration of an employment application would require a most cursory analysis, as, for example, if a blind person were to apply for a hospital position where sightedness is obviously necessary to assure patient safety." I do not know what sort of cursory analysis would be necessary if a blind person applies for a position as surgical nurse other than the mere fact of blindness.

The recital by the majority of the evidence introduced on behalf of appellant, as the basis for its legal position, clearly reveals that what the majority objects to is, in fact, the findings of the trial court. And, to avoid these findings, while paying lip service to them, they have taken a transverse path to undo what they otherwise cannot do. However, the interdiction of cases of the genre of *Page v. Clark*, Colo., 592 P.2d 792 (1979), and *Broncucia v. McGee*, 173 Colo. 22, 475 P.2d 336 (1970), prevents such an approach.

I believe Part II of the majority opinion should read as in the following Appendix A.

## APPENDIX A

### Part II

The evidence showed, and the trial court found, the following pertinent facts: Plaintiff is a trained respiratory therapy technician who would administer treatment directly to patients as prescribed by a physician at scheduled times or during unforeseen emergencies. Her duties would include the utilization of various machines to assist a patient's breathing, and the attachment and detachment of patients to and from the machines. Some of these patients have tracheal tubes inserted in the throat which must be connected to the machine. The machines are equipped with dials and the technician regulates the flow of air and oxygen and medicine content thereof.

The trial court also found, based on the evidence, that plaintiff has been an epileptic since early childhood. She suffered at least two daytime seizures as a child, the last one in 1959 or 1960. During the approximately one minute duration of these seizures, plaintiff "would be in a semicomatose state." Since 1959 plaintiff has constantly been under medication. Even so, since that time she has suffered three seizures at night—the last one in 1973. These seizures, referred to as "psychomotor epilepsy," are generally "short-term episodes," which are characterized by fumbling of the hands, and forgetfulness or inattention. Because of her epilepsy, plaintiff was found to be both a "physically disabled" person under the state act, and a "handicapped individual" under the federal act.

The defendant hospital is an "acute care facility," whose primary orientation is "the care of acutely ill patients, or those undergoing serious surgery . . . ." Plaintiff applied for a position at the hospital and was refused employment because of her history of epilepsy. As stated by the trial court, "[s]ince that time, the Plaintiff has continued her employment as a respiratory therapy technician at other hospitals in the Denver area where she is employed to date."

Defendants' policy was to refuse to hire anyone with a history of epilepsy in a position involving direct, or "hands-on" patient care. However, such persons could be hired in other types of positions.

The policy is based on the belief that, although epilepsy is controllable to a large degree by medication, it is not curable. In the words of the trial court, defendants believe that "there is a likelihood of recurring seizures probable from one with a history of epilepsy and . . . any such seizure would portend danger of possible catastrophic dimensions to any patient being attended by such an employee . . . [T]he acceptance of such a risk is incompatible with the duty owed by a hospital to its patients."

The trial court also found that there is a divergence of competent medical opinion regarding the likelihood of future seizures and the possible risks attendant thereto. Defendants' opinion was found to be reasonable and the court found that the employment policy is "based upon substantial and respectable medical opinion." The court concluded that plaintiff was no "otherwise qualified" under the federal act, and that her disability prevented performance of the work involved under the state act. Thus her complaint was dismissed.[1]

## The State Act

### A.

Plaintiff's principal contention is that the trial court erred by applying an improper standard in rejecting her claim. We disagree.

The state act, § 24–34–801, C.R.S. 1973, provides:

"(1) The general assembly hereby declares that it is the policy of the state:

.  .  .  .  .

(b) That the blind, the visually handicapped, the deaf, the partially deaf, and the otherwise *physically disabled* shall be employed in the state service, the service of the political subdivisions of the state, the pubic schools, and in all other employment supported in whole or in part by public funds on the same terms and conditions as the able-bodied *unless it is shown that the particular disability prevents the performance of the work involved* .  .  .  ." (emphasis added)

Defendants do not contend that the trial court erred in finding that the plaintiff is "physically disabled" under the statute. Thus, the trial court properly determined the issue to be whether plaintiff's disability "prevents the performance of the work involved."

The statute does not state the standard which is to be applied in determining whether a particular disability prevents the performance of the work involved. Plaintiff contends that the proper standard is whether the handicap "presents a substantial probability or at the very least a reasonable probability [of] *substantial* danger or harm to others  .  .  .  ." (emphasis added)  We do not believe that the General Assembly intended, under the threat of criminal penalties, *see* § 24–34–802, C.R.S. 1973, that in order to refuse to hire a handicapped person, a hospital demonstrate a probability of *substantial* danger to its patients.

The trial court correctly noted, that, in general, "hospitals are given wide latitude and discretion in determining the standards of care within an institution and the criteria or employment practices to be utilized in order to achieve the same."  *See, e. g., Silver v. Castle Memorial Hospital*, 53 Haw. 475, 497 P.2d 564, *cert. denied*, 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 500 (1972); *Greisman v. Newcomb Hospital*, 40 N.J. 389, 192 A.2d 817 (1963); *see also Newton v. Board of County Commissioners*, 86 Colo. 446, 282 P. 1068 (1929); *see generally Annot.*, 37 A.L.R.3d 645 (1971).  And the exercise of a hospital's discretion will not be interfered with by a court so long as it is not unreasonable or arbitrary.  *See Newton v. Board of County Commissioners, supra.*

It must also be noted that, although hospitals are not insurers of patients' safety, they are "obligated to use reasonable care and diligence in safeguarding patients submitted to their charge."  *St. Lukes Hospital Ass'n v. Long*, 125 Colo. 25, 240 P.2d 917 (1952); *cf. NLRB v. Baptist Hospital, Inc.*, 442 U.S. 773, 99 S.Ct. 2598, 61 L.Ed.2d 251 (1979) (Burger, C. J., concurring)("[T]he primary mission of every hospital is care and concern for the patients and  .  .  . anything which tends to interfere with that objective cannot be tolerated.").  And, this obligation includes the exercise of care in employing personnel.  *See Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372 (1944).

We are persuaded that the General Assembly, by failing to express any standard

---

1. The trial court also found that no contract had been entered into.  This issue is not involved on appeal.

in the statute, did not intend to depart from these general rules. *See Board of County Commissioners v. Lunney*, 46 Colo. 403, 104 P. 945 (1909); *Jones v. Kristensen*, 38 Colo. App. 513, 563 P.2d 959 (1977), *aff'd*, 195 Colo. 122, 575 P.2d 854 (1978). Had the purpose been to impose a different standard, the statute could easily have been drafted to demonstrate it.

### B.

Plaintiff's reliance on various authorities, in support of her position regarding the intent of the General Assembly, is misplaced. Even if one assumes that federal regulations issued pursuant to the federal act are valid, *see Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), they were not in effect at the time plaintiff was denied employment and, in any event, they do not reveal the intent of our General Assembly. Nor do we agree with plaintiff's contention that the intent of the General Assembly in enacting the state act in 1971 is exhibited by the 1977 amendments to the Colorado Antidiscrimination Act of 1957, § 24–34–301 *et seq.*, C.R.S. 1973 (1978 Cum. Supp.). *See Citizens Utilities Co. v. City of Rocky Ford*, 132 Colo. 427, 289 P.2d 165 (1955).

Plaintiff does not contend that the amendments to the antidiscrimination act, which by their terms apply to acts alleged to have been committed on or after July 1, 1977, *Colo. Sess. Laws* 1977, ch. 326, § 13 at 1215, apply in this case. Thus, we have no reason to, and do not consider any possible effect of these amendments on defendant's policy.

For these same reasons, we must reject plaintiff's arguments regarding defendants' alleged obligation to provide her with "reasonable accommodation." These arguments are based solely on the federal regulations and the 1977 amendments to the antidiscrimination act.[2]

We also find the cases upon which plaintiff relies inapposite. In both *In re Unlawful Employment Practices*, 280 Or. 163, 570 P.2d 76 (1977), and *Samuel Bingham Co.*, 67 Lab.Arb.Serv. (P–H) 706 (1976), the only concern was the possibility of injury to *the employee*. We are not persuaded that the reasoning in either of them should be applied in a case such as this which involves the possibility of injury to uninvolved *third parties, i. e.,* patients in a hospital.

### C.

Based upon all these considerations, we conclude that the trial court properly interpreted the state act to preclude defendants' actions only if they are unreasonable or arbitrary. We also agree with the trial court's conclusion that defendants' policy, and refusal to hire plaintiff based thereon, is neither unreasonable nor arbitrary if it is supported by competent medical opinion. *Cf. Dolan v. Rust*, 195 Colo. 173, 576 P.2d 560 (1978) (decision of an administrative agency is not arbitrary if it is supported by competent evidence).

### D.

Plaintiff contends that the trial court's findings are "contrary to the weight of the evidence." We find no error.

It is fundamental that "[t]he sufficiency, probative effect, and weight of the evidence, and the inferences and conclusions to be drawn therefrom, will not be distributed [by a reviewing court] unless so clearly erroneous as to find no support in the record." *Peterson v. Ground Water Commission*, 195 Colo. 508, 579 P.2d 629 (1978). We must both search the record for, and view the evidence in, the light most favorable to the judgment of the trial court. *Peterson, supra.*

The testimony of defendants' expert witness was sufficient to support the trial court's findings. It was his opinion that a

---

2. The amendments added "handicap" to the impermissible bases for employment decisions, with the following exception: "if there is no reasonable accommodation that the employer can make with regard to the handicap, the handicap actually disqualifies the person from the job, and the handicap has a significant impact on the job. . . ." Section 24–34–306(1)(a), C.R.S. 1973 (1978 Cum. Supp.)

person with a history of epilepsy presents a risk of future seizures and that, given the possible catastrophic consequences of a seizure, the risk of employing such a person as a respiratory therapist in a position involving direct, "hands-on" patient care is incompatible with the hospital's obligation to its patients. Thus, the trial court's finding that defendants' policy "is based upon substantial and respectable medical opinion" is binding on review.

We also reject plaintiff's contention that defendants' policy is unreasonable because it does not involve "individual consideration." There was competent evidence that the risk of future seizures, and in turn, the risk of harm to patients, is present in all persons with a history of epilepsy. Since the risk is common to the class, individualized consideration of members of the class is not necessary. *Cf. New York City Transit Authority v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979) (refusal to employ *all* methadone users, without considering each applicant individually, upheld).

### E.

Plaintiff's final contention is that defendants' policy is arbitrary and unlawful because certain other applicants for employment[3] "[a]t least some of [whom] are potentially as harmful or more harmful to patients as may be [those with histories of] epilepsy," are not similarly excluded, but are considered on an individual basis. This contention is without merit.

In *New York City Transit Authority v. Beazer, supra,* the United States Supreme Court reversed the decision upon which plaintiff relies in support of this argument. Contrary to plaintiff's position, it was held that the individualized consideration of those with alcohol problems did *not* render the treatment of methadone users as a class unconstitutional.

Additionally, this contention, which is, in effect, that defendants' policy denies plaintiff equal protection of the law, fails because there is neither an allegation, nor any

evidence, of the requisite state action. *See Denver Welfare Rights Organization v. PUC,* 190 Colo. 329, 547 P.2d 239 (1976); *Ward v. St. Anthony Hospital,* 476 F.2d 671 (10th Cir. 1973). Similarly, plaintiff's contention that the policy is invalid because it creates an irrebuttable presumption, must be rejected.

Defendants' individual consideration of applicants with other problems is relevant only as a factor to be considered in determining whether or not defendants' policy concerning epileptics is reasonable. Because we are bound by the trial court's finding that defendants' policy is supported by competent medical opinion, we conclude that the policy is neither unreasonable nor arbitrary. Therefore, the trial court properly concluded that plaintiff's disability "prevents the performance of the work involved . . . ." Section 24–34–801(1)(b), C.R.S. 1973.

KELLY, Judge, concurs in part and dissents in part.

While I concur with Judge Ruland's construction of the State Act and its application to the facts of this case in Part II of his opinion, I respectfully dissent from the holding regarding § 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (1974). I have reviewed the statutes set forth in *Trageser v. Libbie Rehabilitation Center, Inc.,* 590 F.2d 87 (4th Cir. 1978), *cert. denied,* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979), and I am not persuaded by the analysis of the Fourth Circuit.

The *Trageser* court applies the limitation of § 604 of Title VI, 42 U.S.C.A. § 2000d–3 (1974) to actions by private parties when the statute on its face is limited to actions by federal departments and agencies. In addition, I am unable to divine the court's distinction between the relief available to federal employees and that available to employees of private institutions receiving federal assistance. Finally, the retroactive application of § 120(a) of the Comprehensive

---

**3.** Included are applicants with high blood pressure, heart disease, back trouble, or with histories of alcoholism, drug abuse, or psychiatric difficulties.

Rehabilitation Services Amendments, 29 U.S.C.A. § 794a(a)(2) (Supp. 1979), seems to me to result in manifest injustice, and I cannot say that the law compels a contrary conclusion.