COLORADO CIVIL RIGHTS
COMMISSION, Appellee,

and

David B. Blessinger,
Complainant-Appellee,

v.

CONAGRA FLOUR MILLING COMPA-
NY, Respondent-Appellant.

No. 85CA1432.

Colorado Court of Appeals,
Div. II.

March 5, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Christa D. Taylor, Asst. Atty. Gen., Denver, for appellees.

McGrath, North, O'Malley & Kratz, P.C., Dean G. Kratz, Omaha, Neb., Brownstein Hyatt Farber & Madden, Richard S. Bayer, Timothy D. Knaus, Denver, for respondent-appellant.

BABCOCK, Judge.

Respondent, ConAgra Flour Milling Company (ConAgra), seeks review of a final order of the Colorado Civil Rights Commission (Commission) which found that it had discriminated against an employee because of his handicap, and which required it to reinstate the employee to his former position with back pay. We affirm.

The facts are not disputed. The issue is whether ConAgra's voluntary imposition of safety regulations promulgated by the U.S. Department of Transportation (DOT) on its intrastate private trucking operations constitutes a defense to a charge of unlawful discrimination because of handicap under § 24-34-402(1)(a), C.R.S. (1986 Cum.Supp.).

Complainant, David B. Blessinger, had worked as a truck driver for ConAgra and its predecessor since 1961. Blessinger has suffered since birth from left optic atrophy, which renders his left eye all but sightless. Despite this visual limitation, he holds a valid class A, B, and C Colorado driver's license, which qualifies him to drive any vehicle ConAgra uses, see Division of Motor Vehicles Regulation No. 42-2-101(2), 1 Code Colo. Reg. 204-6, although his license restricts him to driving vehicles with a left rear-view mirror, which is standard truck equipment and with which all of ConAgra's trucks are equipped. During his employment as a truck driver for ConAgra, Blessinger was not involved in any traffic accidents and had no traffic violations.

Blessinger's truck driving route consisted of hauling flour from ConAgra's mill in Commerce City to bakeries in Denver, then returning to Commerce City. His driving was entirely within the city limits of Denver, except when he left and returned to Commerce City. ConAgra stipulated that it was a private (as opposed to common) carrier within the state of Colorado, and one of its witnesses stated that none of its Colorado-based drivers ever drove outside the state.

ConAgra's policy since 1982 has been that all drivers must be able to meet DOT physical requirements and obtain a DOT medical certification, regardless of whether the drivers' activities and routes are covered by, or exempt from, DOT regulations. See 49 C.F.R. § 391. Conagra has adopted this policy even though the DOT regulations do not apply to motor carrier activities conducted entirely within a state, see 49 U.S.C. §§ 10501(b)(1), 10521(a)(1), 10525(a); they also contain an exemption for operations conducted wholly within a municipality, or between contiguous municipalities. See 49 C.F.R. §§ 390.16, 391.2(a), 1048.101.

The DOT regulations require, for a person to be physically qualified to drive a motor vehicle, that that person have distant visual acuity of at least 20/40 (Snellen) in each eye. 49 C.F.R. § 391.41(b)(10).

In September 1983, Blessinger was examined by ConAgra's doctor for the purpose of renewing Blessinger's medical certificate in accordance with 49 C.F.R. § 391.-45(b) of the DOT regulations, which requires medical examinations for drivers every two years. ConAgra's doctor determined that because Blessinger has "extremely poor eyesight in his left eye," he could not meet DOT standards for visual acuity and, therefore, could not qualify for a DOT medical certificate. The visual acuity requirement is not subject to waiver. See 49 C.F.R. § 391.49.

Based on these medical findings, ConAgra notified Blessinger that he would be removed from his truck driver position and transferred to a nondriving position. In his new position, Blessinger's base wages were lower than his truck driver wages, he has to perform more demanding physical labor, and he does not have a specific job assignment. He has also lost his seniority with regard to job assignment under his union's collective bargaining agreement, he is now

more subject to lay-offs than in his former position, and he has less choice concerning how much overtime he wishes to put in and whether to take overtime assignments when available.

Although Blessinger admits he is not medically certifiable under DOT regulations, an independent ophthamologist who examined Blessinger after his transfer determined that he was fully capable of performing a job as a truck driver because of his intact peripheral left eye vision, good central visual acuity, and his having learned to compensate for his visual defect throughout his life. The ophthamologist also noted that Blessinger's visual acuity in his right eye was 20/20 without correction.

Blessinger filed a complaint of discrimination with the Colorado Civil Rights Commission, alleging that he was denied compensation and other benefits because of his handicap. On March 10, 1984, the Commission's director found probable cause that ConAgra had violated § 24–34–402(1)(a), C.R.S. (1986 Cum.Supp.), and a hearing was held to determine whether ConAgra had unlawfully discriminated against Blessinger because of his handicap in violation of § 24–34–402(1)(a).

The Commission determined that ConAgra had discriminated against Blessinger on the basis of his handicap and, pursuant to § 24–34–405, C.R.S. (1982 Repl.Vol. 10), ordered Blessinger's reinstatement to his truck driver position with back pay, including projected overtime pay, and full seniority. Pursuant to § 24–34–306(9), C.R.S. (1982 Repl.Vol. 10), it also ordered ConAgra to cease and desist discriminating in employment on the basis of handicap, and to file remedial reports with the Commission as it instructed.

## I.

ConAgra now seeks review of that order, contending that because of its compliance with DOT regulations, its transfer of Blessinger to a nondriving position was not a violation of § 24–34–402(1)(a). We disagree.

Section 24–34–402(1)(a) provides, in pertinent part, that it "shall" be a discriminatory employment practice:

"For an employer to refuse to hire, to discharge, to promote or demote, or to discriminate in matters of compensation against any person *otherwise qualified* because of handicap ... but, with regard to a handicap, it is not a discriminatory or unfair employment practice for an employer to act as provided in this paragraph (a) if there is *no reasonable accommodation* that the employer can make with regard to the handicap, the handicap *actually disqualifies the person* from the job, and the handicap has a *significant impact* on the job." (emphasis added)

■ Blessinger's left eye atrophy constitutes a "handicap" as defined by § 24–34–301(4), C.R.S. (1982 Repl.Vol. 10). The Commission found, and it is undisputed, that the sole reason for Blessinger's transfer to a lower-paying position was his inability to qualify for and obtain a DOT medical certificate under 49 C.F.R. §§ 391.-4(b)(10) and 391.43 because of his defective vision.

The Commission also found that ConAgra offered no evidence that Blessinger's visual handicap actually disqualifies him from driving a truck in a safe and efficient manner, nor did it offer any testimony that his left eye atrophy has any significant impact on his ability to drive a truck. The Commission further found, and ConAgra admits, that it made no individual efforts to accommodate Blessinger's handicap so he could continue driving.

Because these findings are either conceded by the parties or supported by substantial evidence in the record, they are binding on review. *See* § 24–34–307(6), C.R.S. (1982 Repl.Vol. 10); *Umberfield v. School District No. 11*, 185 Colo. 165, 522 P.2d 730 (1974).

■ Nevertheless, ConAgra argues that its reliance on DOT safety regulations establishes a "bona fide occupational qualification" (BFOQ) which precludes a conclusion of discrimination where the handicapped employee cannot satisfy the BFOQ.

ConAgra does not contend that § 24–34–402(1)(a) is preempted by federal regulations; the regulations are by their own provisions inapplicable to intrastate and intracity transportation. *See* 49 U.S.C. § 10525; 49 C.F.R. § 391.2. Rather, ConAgra relies on cases from other jurisdictions which have held that DOT safety regulations create a BFOQ, which failure to comply with constitutes a valid defense to a charge of discrimination based on handicap.

■ The BFOQ defense relates to whether an employer has reasonable cause to believe that all or substantially all persons in a specific class are unable to perform the job duties safely and efficiently, or that it is impossible or highly impractical to deal with members of the class on an individualized basis. *See Weeks v. Southern Bell Telephone & Telegraph Co.*, 408 F.2d 228 (5th Cir.1969). If the employer carries its burden of proof, all persons within an otherwise protected class may be excluded from employment on the basis of handicap without inquiry as to whether certain members of the class may, in fact, be capable of safe and efficient job performance. *See Sterling Transit Co. v. Fair Employment Practice Commission*, 121 Cal.App.3d 791, 175 Cal.Rptr. 548 (1981); *see also Weeks v. Southern Bell Telephone & Telegraph Co.*, *supra* (sex-based BFOQ); *Hodgson v. Greyhound Lines, Inc.*, 499 F.2d 859 (7th Cir.1974) (age-based BFOQ); *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224 (5th Cir.1976) (same). However, we conclude that because the unambiguous language of § 24–34–402(1)(a) contemplates a case by case determination of a handicapped individual's actual ability to perform a job safely and efficiently, *see Silverstein v. Sisters of Charity*, 43 Colo.App. 446, 614 P.2d 891 (1979), the BFOQ defense is not applicable to a charge of discrimination brought under § 24–34–402(1)(a), and the cases upon which ConAgra relies are therefore distinguishable.

In *Boynton Cab Co. v. Department of Industry, Labor & Human Relations*, 96 Wis. 2d 396, 291 N.W.2d 850 (1980), the complainant was refused employment as a taxicab driver because of his handicap, the

congenital lack of a right hand and forearm below the elbow. Like ConAgra, the employer there based its refusal on its voluntary imposition of DOT regulations set forth in 49 C.F.R. § 391.41(b), despite its concession that the rules did not apply to intracity operations.

The issue was whether the DOT regulations alone were sufficient to meet the employer's burden to prove that complainant was, because of his handicap, "physically or otherwise unable to efficiently perform, at the standards set by the employer, the duties required in that job." *See* Wis. Stat. § 111.32(5)(f) (1973). To satisfy this burden, the Department of Industry, Labor & Human Relations (DILHR) required the employer to establish to a reasonable probability that because of the complainant's physical condition, his employment in the position sought would be hazardous to his health and safety or to other employees or the public. *See Bucyrus-Erie Co. v. State*, 90 Wis.2d 408, 280 N.W.2d 142 (1979); *Dairy Equipment Co. v. Department of Industry Labor & Human Relations*, 95 Wis.2d 319, 290 N.W.2d 330 (1980).

The Wisconsin Supreme Court reversed DILHR's determination that the employer had not satisfied this burden, on the grounds that it had applied an improper "reasonable probability" standard. The proper standard, the court concluded, was the lesser "rational relationship" test. That test derived from the employer's status as a common carrier, which traditionally has had the duty to exercise the highest degree of care to its passengers consistent with the practical operation of its business. *See Publix Cab Co. v. Fessler*, 138 Colo. 547, 335 P.2d 865, 75 A.L.R.2d 979 (1959).

Based on this standard, the Wisconsin court found that the employer's voluntary adoption of the federal standard as a BFOQ bore a rational relation to the safety obligations imposed upon common carriers. Thus, it ruled the employer had satisfied its burden of proof under the antidiscrimination statute. *Cf. Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985) (to establish valid BFOQ defense, common carrier must

show that job qualification is "reasonably necessary" to overriding public safety interest; rational basis test rejected).

The Commission here rejected the holding in *Boynton Cab Co., supra,* finding that ConAgra operates in Colorado as a private, not a common, carrier and that:

> "[T]his case is closer to the cases which have held the employer, at a minimum, to a 'reasonable probability standard' in justifying job qualifications, rather than holding them to a rational basis standard created especially for common carriers of passengers."

The Commission concluded that, under § 24–34–202(1)(a), ConAgra did not establish to a reasonable probability that drivers who do not meet the DOT requirements are prevented from safely and efficiently performing the job of truck driver. The Commission also determined that ConAgra had failed to meet its burden under the lesser "rational relation" standard as well. We agree with the Commission's determination, albeit for a different reason.

The Colorado statute, § 24–34–402(1)(a), unlike the Wisconsin statute applied in *Boynton Cab Co., supra,* requires an individual determination of every case of alleged discrimination on the basis of handicap. First, the complainant must be "otherwise qualified" for the job but for the handicap. Once the complainant makes a showing that he or she is qualified for the position, but was denied hire, discharged, demoted, or discriminated against in matters of compensation because of handicap, the burden then shifts to the employer to prove that there is "no reasonable accommodation" that the employer can make with regard to the handicap, that the handicap "actually disqualifies" the person from the job, and that the handicap has a "significant impact" on the job.

Where the language of a statute is plain, its meaning clear, and no absurdity results, the statute must be interpreted as written. *Dawson v. Public Employees' Retirement Ass'n,* 664 P.2d 702 (Colo.1983); *Myers v. Woodall,* 42 Colo.App. 44, 592 P.2d 1343 (1978). Thus, under the plain language of § 24–34–402(1)(a), the burden upon the employer is not to prove to a reasonable probability that the class of employees, because of their handicap, is unable to perform the job duties safely and efficiently. Rather, it must show that the individual in question is *actually* unable to perform the job safely and efficiently to the extent that the particular handicap has a *significant* impact on that person's ability to perform the job. *See Silverstein v. Sisters of Charity, supra.* Here, ConAgra has failed to meet this burden.

This construction comports with our General Assembly's declaration of public policy in § 24–34–801(1)(a), C.R.S. (1982 Repl.Vol. 10), and with our holding that the antidiscrimination act was enacted for a beneficent purpose and should be liberally construed in favor of the legal remedies it provides. *See State ex rel. Colorado Civil Rights Commission v. Adolph Coors Corp.,* 29 Colo. App. 240, 486 P.2d 43 (1971). Accordingly, the imposition of a BFOQ, which would exclude an entire class of handicapped persons solely on the basis of handicap, without any determination pertaining to the ability of the individual in question, is not a valid defense to a charge of employment discrimination based on handicap under § 24–34–402(1)(a). *See Silverstein v. Sisters of Charity, supra; cf. Sterling Transit Co. v. Fair Employment Practice Commission, supra.* ConAgra's argument that it does not practice discrimination because it treats all handicapped drivers alike is thus without merit, since § 24–34–402(1)(a) predicates a finding of discrimination based on the treatment of individuals, not on classes of individuals.

*Lewis v. Metropolitan Transit Commission,* 320 N.W.2d 426 (Minn.1982), also cited by ConAgra in support, is similarly distinguishable. Consequently, because of the vast difference in language between § 24–34–402(1)(a) and the statutes involved in *Boynton Cab Co.* and *Lewis, supra,* and the federal statutes involved in *Weeks v. Southern Bell, supra, Hodgson v. Greyhound, supra,* and *Usery v. Tamiami Trail Tours, supra,* we determine these cases, however similar in their facts, to be distinguishable and, thus, inapposite. Con-

Agra's contention that the differences in statutory language are "minor" is without merit.

*Ranger Division, Ryder Truck Lines, Inc. v. Bayne,* 214 Neb. 251, 333 N.W.2d 891 (1983) is also distinguishable because the employer there was an interstate carrier subject to DOT regulations, which the Nebraska Supreme Court determined on a federal preemption rationale created a *per se* BFOQ defense to Nebraska's antidiscrimination statute. Because the preemption doctrine is not applicable here, we do not regard that case as either relevant or dispositive.

## II.

■ ConAgra also contends that the Commission's calculation of back pay owed was in error because the overtime hours used to make the calculation were speculative. ConAgra argues that Blessinger's damages should be measured only by the difference between what he was paid and what was paid to his replacement. We disagree.

Section 24–34–405 vests the Commission with broad discretion in fashioning relief in cases of unfair discrimination. The Commission may award complainant the amount of back pay he would have received in the absence of ConAgra's discriminatory conduct. *See City & County of Denver v. Colorado Civil Rights Commission,* 638 P.2d 837 (Colo.App.1981), *overruled on other grounds, World Wide Construction Services, Inc. v. Chapman,* 683 P.2d 1198 (Colo.1984).

Here, the Commission's findings as to what Blessinger's earnings would have been are supported by substantial evidence in the record. Although the amount of overtime pay awarded is an approximation, it is a reasonable estimate based upon Blessinger's prior overtime work schedule as testified to by Blessinger and his supervisor. We thus find no abuse of discretion in this regard.

Order affirmed.

SMITH and TURSI, JJ., concur.