24CA0829 Peo in Interest of Fairchild 07-18-2024 COLORADO COURT OF APPEALS Court of Appeals No. 24CA0829 Pueblo County District Court No. 24MH30018 Honorable Timothy O’Shea, Judge The People of the State of Colorado, Petitioner-Appellee, In the Interest of Kenneth Gabriel Fairchild, Respondent-Appellant. ORDER AFFIRMED Division III Opinion by JUDGE MOULTRIE Dunn and Yun, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee Tezak Law, P.C., Mary E. Tezak, Florence, Colorado, for Respondent-Appellant 
1 ¶ 1 Respondent, Kenneth Gabriel Fairchild, appeals the district court’s order authorizing the involuntary administration of antipsychotic and mood stabilizing medications for the purpose of restoring him to competency to stand trial. We affirm. I. Background ¶ 2 Fairchild was charged with multiple felonies and misdemeanors (in two separate cases) and found incompetent to stand trial. He was ordered to undergo competency restoration and received approximately one year of outpatient competency restoration treatment before he was admitted to the Colorado Mental Health Hospital in Pueblo (CMHHIP) for inpatient competency restoration treatment. During his court-ordered treatment, Fairchild consistently refused to take antipsychotic medication. ¶ 3 At CMHHIP, Fairchild was diagnosed with schizoaffective disorder, which causes him to have delusional beliefs, poor insight into the symptoms of his psychiatric illness, and ongoing auditory hallucinations. About eight months after his admission to CMHHIP, the People petitioned the district court to authorize involuntary administration of antipsychotic and mood stabilizing 
2 medications to restore Fairchild to competency. After a hearing, the district court held that the People had satisfied all four factors required by Sell v. United States, 539 U.S. 166 (2003), for the involuntary administration of medication to restore an individual’s competency. The court therefore granted the petition and authorized the involuntary administration of the requested medications to restore Fairchild to competency. II. Sufficiency of the Evidence ¶ 4 Fairchild asserts that the evidence presented at the hearing was insufficient to support the involuntary medication order. While he concedes that sufficient evidence supports the first and fourth factors set forth in Sell, he asserts that insufficient evidence established the second and third factors. We disagree. A. Standard of Review ¶ 5 There is a split of authority in our court concerning the appropriate standard of review for the Sell factors. Compare People in Interest of Hardesty, 2014 COA 138, ¶¶ 15-17 (identifying eight Sell factors and applying a mixed question review to the first factor, de novo review to the second factor, and clear error review to the remaining six factors), with People in Interest of R.F., 2019 COA 
3 110, ¶ 21 (identifying four Sell factors and applying de novo review to the first factor and clear error review for the remaining three factors); see also People in Interest of Joergensen, 2022 COA 126, ¶¶ 11-12 (noting that there are “four [Sell] elements” and stating that “the resolution of a Sell motion presents a mixed question of fact and law.”). We agree with the division’s reasoning in Interest of R.F. and review the district court’s factual findings concerning the second and third Sell factors for clear error. “Clear error” review means we won’t disturb a court’s factual findings if there is any evidence in the record to support them. Woodbridge Condo. Ass’n, Inc. v. Lo Viento Blanco, LLC, 2020 COA 34, ¶ 24. B. Applicable Law ¶ 6 The United States Supreme Court has established a four-part test for determining when a state may involuntarily administer antipsychotic medication to restore a defendant’s competency in a criminal proceeding. See Sell, 539 U.S. at 180-81; see also R.F., ¶ 21. At a Sell hearing, the People bear the burden of proving each of the four elements by clear and convincing evidence. R.F., ¶ 16. ¶ 7 First, there must be important governmental interests at stake. Sell, 539 U.S. at 180; R.F., ¶ 12. Bringing to trial an 
4 individual accused of a serious crime is an important governmental interest. Sell, 539 U.S. at 180; R.F., ¶ 12. ¶ 8 Second, administering involuntary medication must significantly further those interests. Sell, 539 U.S. at 181; R.F., ¶ 13. The state satisfies this factor by showing that (1) administering the medication is substantially likely to restore the defendant’s competency and (2) the medication is substantially unlikely to have side effects that will interfere with the defendant’s ability to assist in the defense. Sell, 539 U.S. at 181; R.F., ¶ 13. ¶ 9 Third, the medication must be necessary to further the government’s interests. Sell, 539 U.S. at 181; R.F., ¶ 14. The state satisfies this factor by showing that (1) any less intrusive treatment alternatives are unlikely to achieve substantially the same results and (2) less intrusive means for administering the medication were considered. Sell, 539 U.S. at 181; R.F., ¶ 14. ¶ 10 Fourth, administering the medication must be medically appropriate. Sell, 539 U.S. at 181; R.F., ¶ 15. 
5 C. Second Sell Factor: Involuntary Medication Will Significantly Further Important Governmental Interests ¶ 11 Fairchild asserts that there was insufficient evidence to establish that the involuntary administration of the requested medications would significantly further the State’s interest in prosecuting him. In particular, he contests the district court’s finding that the administration of the requested medications is substantially likely to render him competent to stand trial. We disagree. ¶ 12 Fairchild argues that while the psychiatrist testified that the requested medications would render him competent to stand trial, the psychiatrist did not elaborate how the proposed treatment was tailored to address his “unique” presentation. ¶ 13 True, the psychiatrist testified that “Fairchild’s presentation is unique in that he has [] prominent delusions regarding individuals monitoring him, or tracking him, and antagonizing him in various ways,” and that primary delusional disorders “are seen as more difficult to treat.” But because Fairchild displayed other symptoms — including repeated auditory hallucinations, which, the psychiatrist testified are not typically seen in a primary delusional 
6 disorder and are “easily treated with antipsychotic medications” — he opined that Fairchild would be responsive to the proposed treatment. Moreover, when asked whether the medications would treat Fairchild’s delusions, the psychiatrist testified that they would. He testified that Invega and Zyprexa would “improve symptoms that [Fairchild] experiences including underlying delusions and paranoia and ongoing auditory and tactile hallucinations” and that Depakote, which is a mood-stabilizing medication, would improve Fairchild’s “symptoms of underlying mania or hypo-mania.” And he opined that “given the quality of [his symptoms],” Fairchild “requires treatment with antipsychotic and mood-stabilizing medication.” ¶ 14 We are not persuaded otherwise by the suggestion that an MRI could reveal an undiscovered alternative explanation for Fairchild’s symptoms, which would undermine the likelihood that the proposed medications would render Fairchild competent to stand trial. The psychiatrist testified that although an MRI could be done in the future to rule out neurological disorders, because of the late onset of Fairchild’s symptoms, he did not think an MRI was a priority because it would not “show anything that’s treatable.” Rather, 
7 “based off [Fairchild’s] presentation and his history, the symptoms he’s displaying [are] primarily psychiatric in nature.” ¶ 15 Because there is factual support in the record for the district court’s findings, those findings are not clearly erroneous. Accordingly, we conclude that the People met their burden to establish by clear and convincing evidence that the requested medications were substantially likely to render Fairchild competent to stand trial, thereby significantly furthering the important governmental interest at stake. D. Third Sell Factor: Involuntary Medication is Necessary to Further Important Governmental Interests ¶ 16 Fairchild also asserts that there was insufficient evidence to support the third Sell factor. Again, we disagree. ¶ 17 Fairchild argues that a less intrusive treatment alternative exists in “simply using Invega, with Zyprexa as a backup, and omitting Depakote from the treatment plan.” He reasons that because the symptoms targeted by Depakote are “not symptoms that have historically contributed to [his] failed competency evaluations,” Depakote is not necessary to further the government’s interests. 
8 ¶ 18 We disagree that the symptoms targeted by Depakote are not symptoms that have contributed to Fairchild’s failed competency evaluations. ¶ 19 Fairchild testified that he had four competency evaluations since arriving at the hospital. The psychiatrist opined that all the recommended medications were necessary to render Fairchild competent to stand trial. The psychiatrist testified that Invega (and Zyprexa as a backup) would address Fairchild’s underlying delusions and paranoia — symptoms the psychiatrist pointed to that “affect [Fairchild’s] ability to effectively participate and work with his attorneys” — that Depakote would “improve symptoms of underlying mania or hypo-mania that have been described in the nursing record throughout [Fairchild’s] stay at this hospitalization.” Moreover, the psychiatrist testified that at times Fairchild becomes “irritable” and “very angry” “because of [his] hallucinations.” And the psychiatrist testified that Depakote would improve Fairchild’s symptoms of “irritability, high energy, decreased need for sleep, and rapid and pressured speech.” Finally, the psychiatrist opined that he did not believe there was an alternative method of treating Fairchild that would be both effective and less intrusive than the 
9 requested medications; rather, he testified that “[g]iven the quality of [Fairchild’s] symptoms . . . [Fairchild] requires treatment with an antipsychotic medication and a mood-stabilizing medication.” ¶ 20 Based on this testimony, the district court found that the proposed medications were necessary to further the important governmental interests at stake and any alternative, less intrusive treatments were unlikely to achieve substantially the same results. Because the record supports the court’s finding as to this factor, it was not clearly erroneous. ¶ 21 Accordingly, because we conclude that the People have met their burden to prove the second and third Sell factor, we affirm the district court’s order. III. Disposition ¶ 22 The order is affirmed. JUDGE DUNN and JUDGE YUN concur.